United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 27, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

**No. 02-60405**

**JOSE MIRELES-VALDEZ,**

**Petitioner,**

**versus**

**JOHN ASHCROFT, U.S. ATTORNEY GENERAL,**

**Respondent.**

**Petition for Review of an Order of the
Board of Immigration Appeals
(No. A91-198-797)**

Before BARKSDALE, DeMOSS, and BENAVIDES, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

If we have jurisdiction, *see* 8 U.S.C. § 1252 (prescribing rules for judicial review of removal orders and, *inter alia*, precluding jurisdiction over certain denials of discretionary relief), at issue is whether a voluntary departure from the United States under the threat of the commencement of immigration proceedings interrupts the requisite continuous presence for eligibility for cancellation of removal, pursuant to 8 U.S.C. § 1229b (prescribing the four requirements for cancellation of removal eligibility).  We have jurisdiction; such departure is an interruption.  **DENIED.**

Mireles-Valdez, a native and citizen of Mexico, illegally entered the United States in 1973; departed in 1998; was apprehended at the border 14 days later, while attempting to return; agreed to accept an administrative voluntary departure; and was returned to Mexico without having proceedings brought against him. The day after that departure, however, Mireles-Valdez illegally returned to the United States. In February 1999, he was arrested and turned over to the INS, which began proceedings against him on 8 February 1999 by issuing a Notice to Appear.

In those proceedings, Mireles-Valdez admitted he was present illegally in the United States and therefore subject to removal. He applied, *inter alia*, for cancellation of removal (cancellation), pursuant to 8 U.S.C. § 1229b. To be eligible, an alien must satisfy four statutory requirements. *See* 8 U.S.C. § 1229b(b). One requirement is ten years' continuous physical presence in the United States (presence requirement). 8 U.S.C. § 1229b(b)(1)(A). Even if the alien can establish such eligibility, the Attorney General retains discretion to deny cancellation. *See* 8 U.S.C. § 1229b(b)(1) (Attorney General "may" cancel removal); **Sad v. INS**, 246 F.3d 811, 819 (6th Cir. 2001) ("Even if an alien satisfies the conditions to qualify for relief, the Attorney General retains discretion to grant or deny the application.").

Concerning cancellation, the immigration judge (IJ) ruled that Mireles-Valdez did not satisfy the presence requirement because his accepting voluntary departure in 1998 interrupted his continuous presence; therefore, cancellation was denied. Mireles-Valdez was ordered removed.

Mireles-Valdez appealed the IJ's decision to the Board of Immigration Appeals (BIA). It affirmed in April 2002, without opinion.

## II.

The BIA's factual findings are reviewed for substantial evidence, *e.g., **Lopez de Jesus v. INS***, 312 F.3d 155, 158-59 (5th Cir. 2002); rulings of law, *de novo*, deferring to the BIA's interpretation of the immigration statutes, ***id***. at 158. When, as in this instance, the BIA affirms without opinion, we review the IJ's decision. *See **Soadjede v. Ashcroft***, 324 F.3d 830, 832 (5th Cir. 2003).

### A.

Pursuant to 8 U.S.C. § 1252(a)(2)(B), "no court shall have jurisdiction to review ... any judgment regarding the granting of relief under section ... 1229b [cancellation]". The extent of this jurisdiction-bar is determined, in part, by the meaning given the phrase "judgment regarding the granting of relief".

Both Mireles-Valdez and the Attorney General urge "judgment" being read to refer to discretionary determinations by the Attorney

General and his designees. In other words, this would permit judicial review of nondiscretionary determinations. The parties further contend that the decision at issue — Mireles-Valdez was not statutorily eligible for cancellation of removal because he did not satisfy the presence requirement — is nondiscretionary. This is consistent with the IJ's stating that Mireles-Valdez' "application for cancellation of removal is *denied as a matter of law* and *not* in the exercise of discretion". (Emphasis added.)

1.

Because Congress has delegated to the Attorney General significant responsibility over immigration matters, his construction of immigration statutes is entitled to considerable deference. *See* 8 U.S.C. § 1103(a)(1) (Attorney General "shall be charged with the administration and enforcement of this chapter [8 U.S.C. §§ 1101-1537] and all other laws relating to the immigration and naturalization of aliens"; his "determination and ruling ... with respect to all questions of law shall be controlling"); **Amanfi v. Ashcroft**, 328 F.3d 719, 721 (3d Cir. 2003) (Attorney General is "ultimate authority on interpretations" of the immigration statutes). This is consistent with our "tak[ing] appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in

4

immigration matters". *Zadvydas v. Davis*, 533 U.S. 678, 700 (2001).

Regarding jurisdiction pursuant to § 1252(a)(2)(B), the Attorney General notes that several circuits have adopted the position urged here. *Montero-Martinez v. Ashcroft*, 277 F.3d 1137, 1144 (9th Cir. 2002), also involving a cancellation application, held: the jurisdiction-stripping provision "eliminates jurisdiction only over decisions by the BIA that involve the exercise of discretion"; and the court retained jurisdiction over the "purely legal and non-discretionary question" in that case. *Iddir v. INS*, 301 F.3d 492, 497 (7th Cir. 2002), concerning the application of § 1252(a)(2)(B) for discretionary relief other than cancellation, held: § 1252(a)(2)(B) "only bars review of actual discretionary decisions to grant or deny relief under the enumerated sections", including cancellation. *Gonzalez-Oropeza v. U.S. Attorney General*, 321 F.3d 1331, 1332-33 (11th Cir. 2003), resolved a question of jurisdiction under § 1252(a)(2)(B) by looking to that circuit's rulings that a previous statute "precludes appellate review of discretionary decisions, but does not preclude review of non-discretionary legal decisions that pertain to statutory eligibility for discretionary relief" and applied that distinction in the context of § 1252(a)(2)(B). Most recently, *Mendez-Moranchel v. Ashcroft*, 338 F.3d 176, 178 (3d Cir. 2003), reviewed *Montero-Martinez* and *Iddir* and held: "We join the other circuits and conclude that, for nondiscretionary factors, the

5

Court maintains jurisdiction, but as to discretionary decisions we lack jurisdiction".

Our circuit has considered limitations on our jurisdiction in the immigration context similar to that in § 1252(a)(2)(B). *Moosa v. INS*, 171 F.3d 994 (5th Cir. 1999), which concerned an interim jurisdictional statute, held: the jurisdictional bar precluded review of the denial of suspension of deportation (a discretionary form of relief which was a predecessor to cancellation) when the denial was explicitly exercised in the IJ's discretion and would have been denied even if the alien had met all the statutory requirements for relief, *id.* at 1011; and the determination that an alien was ineligible for suspension of deportation because he failed to meet the statutory hardship requirement was made in the IJ's discretion, thereby precluding our review, *id.* at 1012. And, *Gonzalez-Torres v. INS*, 213 F.3d 899, 901 (5th Cir. 2000), held we had jurisdiction to review an IJ's determination that an alien lacked the seven years' presence requirement for suspension of deportation because the "determination is not a matter of agency discretion, but involves application of the law to factual determinations". Similarly, *Omagah v. Ashcroft*, 288 F.3d 254, 259 (5th Cir. 2002), in the face of a transitional jurisdiction-stripping rule, held we could review a decision that an alien did not meet the good moral character requirement for suspension of deportation "because the statute classifies it as

6

nondiscretionary".   In each instance, applying a similar jurisdiction-stripping bar, we considered whether the decision — that an alien failed to meet the statutory requirements for relief or that an alien would not receive relief even if the requirements were met — was an exercise of discretion.

Finally, Congress is presumed to know the meaning courts have given its enactments.  Concomitantly, it can amend § 1252(a)(2)(B) should it decide to change the way it is being applied by federal courts.

In the light of the consistent interpretation given § 1252(a)(2)(B), we hold:   its ban on review of "judgment[s] regarding the granting of relief" precludes review only of *discretionary* decisions.  Therefore, we must next decide whether the one at issue is discretionary.

2.

As noted, it was determined that Mireles-Valdez failed the presence requirement.  Again, to be eligible, an alien must establish he "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date" of his cancellation application.  8 U.S.C. § 1229b(b)(1)(A).  Once again, we give great weight to the Attorney General's position that this determination is not discretionary.

*Kalaw v. INS*, 133 F.3d 1147, 1151 (9th Cir. 1997), concerning the transitional immigration rules, held:  "Either the petitioner

7

has been continuously present in the United States ... or the petitioner has not"; and the court had jurisdiction to review decisions based solely on that issue. In *Vasquez-Lopez v. Ashcroft*, 343 F.3d 961 (9th Cir. 2003), concerning the permanent rules at issue here and without discussing the basis for jurisdiction, the same court exercised jurisdiction over a challenge to the BIA's application of the presence requirement. As discussed above, under transitional jurisdiction rules, we held in *Gonzalez-Torres*, 213 F.3d at 901, that we could review a denial of discretionary relief based on a failure to establish continuous presence.

Therefore, we hold: whether an alien satisfies the continuous presence requirement is a nondiscretionary determination because it involves straightforward statutory interpretation and application of law to fact. Accordingly, we have jurisdiction to review whether Mireles-Valdez was ineligible for cancellation because he lacked the required continuous presence.

This holding does not conflict with our recent decision in *Bravo v. Ashcroft*, 341 F.3d 590, 593 (5th Cir. 2003), that federal courts lack jurisdiction over a habeas challenge to an IJ's determination that aliens were ineligible for cancellation because they could not satisfy the exceptional and extremely unusual hardship requirement. First, *Bravo*'s holding concerning habeas jurisdiction does not control our jurisdiction for a petition for

8

review.  Second, as noted, **Bravo** concerned cancellation eligibility pursuant to the hardship requirement; that is quite different from the presence requirement at issue here.

B.

1.

The parties agree that Mireles-Valdez' first of two departures (absent for 14 days) did not interrupt his continuous presence. This is not inconsistent with § 1229b(d)(2)'s providing that being absent for any single period of more than 90 days, or any aggregate period of more than 180 days, automatically interrupts continuous presence.  8 U.S.C. § 1229b(d)(2).

We will assume, as the parties appear to, that § 1229b(d)(2) provides by implication that absences shorter than those listed do not *automatically* interrupt continuous presence.  On the other hand, the statute does not create the implication that all absences of less than the 90/180 day periods are not such an interruption. *See **In re Romalez-Alcaide***, 23 I. & N. Dec. 423, 426 (2002) ("The objective command that departures of certain lengths 'shall' break continuous physical presence implies that shorter departures are acceptable, but it does not specifically exempt all such shorter departures.")

At issue is the effect of Mireles-Valdez' second departure — when he voluntarily departed the United States under threat of immigration proceedings (voluntary departure).   The Attorney

9

General asserts that, for cancellation purposes, the continuous presence then came to an end. If this is correct, Mireles-Valdez' continuous presence began anew when he illegally entered the United States the day after his voluntary departure, so that his required ten years' continuous presence did not begin until 1998.

Mireles-Valdez claims his voluntary departure did not interrupt his continuous presence; that, for cancellation purposes, he has been in the United States since 1973. In support, he points to 8 U.S.C. § 1229b(d), entitled "Special rules relating to continuous residence or physical presence". He contends: § 1229b(d), subparts (1) and (2), provide the exclusive means by which continuous presence is terminated; and in enacting these subparts in 1996, Congress repealed prior law, upon which the IJ relied in this instance — that voluntary departure interrupts continuous presence.

Section 1229b(d)(1) provides that continuous presence "shall be deemed to end" in several circumstances, including most instances in which a Notice to Appear is served, as referenced *infra*, and for certain offenses. It does not state that these are the only circumstances in which continuous presence "shall be deemed to end". In fact, subpart (d)(1) cannot be exhaustive because, as discussed *supra*, subpart (d)(2) provides that certain absences, on the basis of their length, terminate continuous presence.

10

The statute at issue does not state that its provisions are exhaustive. The Attorney General has determined that they are not. For the reasons discussed earlier, we defer to the Attorney General's interpretation, discussed below. *See* **Wilson v. INS**, 43 F.3d 211, 213 (5th Cir.), *cert. denied* 516 U.S. 811 (1995).

For the decision at issue, in prior rule making, and in a decision shortly after the BIA's decision in this instance, the Attorney General has determined that the current version of § 1229b(d) did not repeal prior law under which voluntary departure interrupted continuous presence. For the instant matter, the IJ relied on the obvious and compelling fact that voluntary departure, with its attendant understanding that the alien will cease his illegal presence, is inconsistent with continuous presence.

Subsequent to the commencement of the administrative proceedings here, but prior to their resolution, the Attorney General, through a published regulation, clarified voluntary departure's effect on continuous presence. In June 1999, the Attorney General issued 8 C.F.R. § 240.64(b)(3); it provides: at least for persons applying for "special rule cancellation of removal" under the Nicaraguan Adjustment and Central American Relief Act, Pub. L. No. 105-100, 111 Stat. 2160 (1997), "a period of continuous physical presence is terminated whenever ... the alien has voluntarily departed under the threat of deportation".

11

For the instant matter, the BIA ruled in April 2002. The next month, it decided in the earlier-cited *In re Romalez-Alcaide*, 23 I. & N. Dec. 423 (2002), that voluntary departure under threat of deportation interrupted continuous presence for cancellation purposes.

In these instances, the Attorney General has determined that voluntary departure in circumstances such as these interrupts continuous presence. This conclusion is reasonable. Again, voluntary departure, whether offered at the end of immigration proceedings or earlier at the border (as in this instance), is granted an alien as a form of clemency in return for his agreeing to relinquish his illegal presence. Voluntary departure is "pursuant to an agreement between [the illegal alien] and the Attorney General under which [the illegal alien] agreed to depart and not to return other than in accordance with the entry process applicable to all aliens". *Vasquez-Lopez*, 343 F.3d at 974. When the Attorney General grants voluntary departure, the alien cannot later claim that he did so while continuing his continuous presence for use in a future adjudication for discretionary relief.

In *Vasquez-Lopez*, the Ninth Circuit addressed the effect of voluntary departure, granted at the end of immigration proceedings, on continuous presence for cancellation purposes. There, the grant of voluntary departure necessarily followed the issuance of a Notice to Appear; here, the voluntary departure was at the border.

Nevertheless, we agree with **Vasquez-Lopez** that the 1996 amendments do not require the Attorney General to conclude that, for cancellation purposes, voluntary departure does not interrupt continuous presence.

2.

Mireles-Valdez also appears to claim a denial of due process because voluntary departure was offered, and accepted, without his being warned about its consequences. "Eligibility for discretionary relief from a removal order is not 'a liberty or property interest warranting due process protection'...." **United States v. Calderon-Pena**, 339 F.3d 320, 324 (5th Cir. 2003).

III.

For the foregoing reasons, the petition is

**DENIED**.