# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3961

_____

| | | |
|---|---|---|
| Feliciano Flores Palomino, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | |
| | * | |
| John Ashcroft, Attorney General | * | |
| of the United States, | * | |
| | * | |
| Respondent. | * | Appeal from the Board of |
| _____ | * | Immigration Appeals. |
| | * | |
| American Immigration Law | * | |
| Foundation, | * | |
| | * | |
| Amicus on Behalf of | * | |
| Petitioner. | * | |

_____

Submitted: November 21, 2003

Filed: January 15, 2004

_____

Before MURPHY, LAY, and BRIGHT, Circuit Judges.

_____

MURPHY, Circuit Judge.

Feliciano Flores Palomino, a native and citizen of Mexico, seeks cancellation of removal from the United States under 8 U.S.C. § 1229b(b)(1). An immigration judge found Flores Palomino removable as an alien entering without

inspection and denied his cancellation of removal application because he had previously voluntarily departed from this country under threat of deportation. The Board of Immigration Appeals (BIA) summarily affirmed, and Flores Palomino appeals. We affirm.

Flores Palomino first entered the United States without inspection in January 1987. He encountered Immigration and Naturalization Service (INS) officials after he reentered the United States without inspection in April 1997 near San Ysidro, California. The INS gave him the option of voluntarily departing or facing formal administrative deportation proceedings. Flores Palomino chose to depart voluntarily and left the United States in April 1997, but he returned a few weeks later without having been admitted or paroled into the country.

The INS commenced removal proceedings against Flores Palomino by sending him a notice to appear on September 2, 1998. The notice to appear alleged that Flores Palomino was removable because he had entered the country without inspection. Subsequently the INS filed an additional charging document, which alleged that Flores Palomino was removable because he had been convicted of a crime in Minnesota involving moral turpitude, an enhanced gross misdemeanor of driving with a blood alcohol concentration of .22. Flores Palomino admitted all the factual allegations and charges contained in the notice to appear, but denied the charge of removability and applied for cancellation of removal.

At a hearing on August 24, 1999, an immigration judge found Flores Palomino to be removable as an alien who was present in the United States without having been admitted or paroled and denied his application for cancellation of removal. The judge did not base his removability on the Minnesota conviction because that offense had not required a finding of moral turpitude, but he rejected Flores Palomino's argument that under § 1229b(d)(2) he was entitled to cancellation of removal because he had not been outside the country for more than 90 days at one time or for a total of 180 days. The judge ruled that Flores

Palomino could not meet the continuous physical presence requirement for cancellation of removal because his earlier voluntarily departure from the United States under threat of deportation had ended his period of continuous physical presence in this country. Flores Palomino was again granted voluntary departure to Mexico and appealed the denial of his application for cancellation of removal. The BIA summarily affirmed, and Flores Palomino appeals.

When the board summarily affirms an immigration judge's decision, we review the judge's findings as though they had been made by the BIA. Dominguez v. Ashcroft, 336 F.3d 678, 679 n.1 (8th Cir. 2003). Our standard of review for legal determinations is de novo, INS v. Aguirre-Aguirre, 526 U.S. 415, 424 (1999), but some deference is appropriate in the immigration context because sensitive political decisions with important diplomatic repercussions may be involved. Id. at 425.

Cancellation of removal is discretionary relief which may be granted by the Attorney General under 8 U.S.C. § 1229b(b)(1). Eligibility for such relief requires that the nonpermanent resident alien have been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of application; have had good moral character during the preceding 10 years; have not been convicted of an offense under §§ 1182(a)(2), 1227(a)(2), or 1227(a)(3) (unless the Attorney General has granted a waiver); and have established that removal would result in exceptional and extremely unusual hardship to a spouse, parent, or child who is a citizen of the United States or a lawfully admitted permanent resident. See 8 U.S.C. § 1229b(b)(1) (2003). An alien cannot show continuous physical presence if he has committed certain crimes in this country, has received a notice to appear for deportation hearings, or has departed "from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days." Id. at § 1229b(d)(2).

3

Flores Palomino claims that the immigration judge erred in denying his application for cancellation of removal by relying on In re Romalez-Alcaide, 23 I. & N. Dec. 423 (2002), and that the BIA has misinterpreted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104-208, 110 Stat. 3009-546 (1996). He argues that the IIRIRA does not explicitly state that voluntary departure under threat of deportation interrupts continuous physical presence and argues that § 1229b(d)(2) should be read to make an alien ineligible for cancellation of removal only if he has departed from the United States for more than 90 days at one time or for a total of 180 days.

In its 2002 decision in Romalez-Alcaide, the BIA noted that departure for either a single interval of 90 days or an aggregate of 180 days is only one statutory ground for ineligibility for cancellation of removal. It held that continuous physical presence comes to an end when an alien voluntarily departs under threat of deportation. ("The objective command that departures of certain lengths 'shall' break continuous physical presence implies that shorter departures are acceptable, but it does not specifically exempt all such shorter departures.") 23 I. & N. Dec. at 426. The BIA also pointed out that its interpretation was consistent with preIIRIRA law under which voluntary departure under threat of forced removal interrupted an alien's continuous physical presence. See INS v. Rios-Pineda, 471 U.S. 444, 451 (1985).

Although the question before this court is not explicitly answered in the governing statute, the 90/180 day limit contained in § 1229b(d)(2) is by no means the exclusive definition of a break in continuous physical presence. Such a presence may be ended in other ways as well, such as when a notice to appear is served or when an alien is convicted of certain offenses. Id. at § 1229b(d)(1). The Attorney General has interpreted the statute to mean that the time provision in § 1229b(d)(2) is not the only way in which continuous physical presence may be interrupted, and we conclude that his interpretation is reasonable and consistent with the statute. See Romalez-Alcaide, 23 I. & N. Dec. at 423.

4

During the past year two other circuits have been presented with similar issues to the one before the court. In all three cases the alien seeking cancellation of removal had previously voluntarily departed under the threat of forced removal.

In Mireles-Valdez v. Ashcroft, 349 F.3d 213 (5th Cir. 2003), the alien had been granted voluntary departure at the border rather than during a removal proceeding, and the Fifth Circuit concluded that his departure had ended his continuous physical presence in the United States. Id. at 218 ("The statute at issue does not state that its provisions are exhaustive. The Attorney General has determined that they are not. [W]e defer to the Attorney General's interpretation."). The court concluded that the Attorney General's interpretation was reasonable because voluntary departure, whether offered at the end of formal deportation proceedings or at the border, is a form of clemency granted to the alien in return for his promise not to return. 349 F.3d at 218. An alien cannot later retract his consent to this agreement by arguing that his voluntary departure did not break the continuous presence required for later discretionary relief. Id.

The alien in Vasquez-Lopez v. Ashcroft, 343 F.3d 969 (per curiam), reh'g denied 343 F.3d 961 (9th Cir. 2003), had also departed after accepting voluntary departure in lieu of removal. The Ninth Circuit concluded that the Attorney General had correctly interpreted the IIRIRA because the alien had not been "physically present" in the country while in Mexico and his "absence was not inadvertent, casual, or otherwise lacking in significance" but occurred under an agreement by which he had consented to leave the United States and not return. Id. at 973-74 ("We conclude that the BIA's and the Attorney General's reading of the statute is reasonable and worthy of our deference.").

We agree with the Fifth and Ninth Circuits that the 1996 IIRIRA amendments gave the Attorney General substantial discretion in granting cancellation of removal and his reasonable conclusion that voluntary departure in

5

the circumstances of this case interrupted the alien's continuous physical presence in this country is within his discretion.

For these reasons, the decision of the BIA is affirmed.

_____