# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3326

_____

Antonio Reyes-Vasquez,

        Petitioner,

v.

John Ashcroft, Attorney General
of the United States of America,

        Respondent.

\*  
\*  
\*  
\*  
\*  Petition for Review of an Order
\*  of the Immigration & Naturalization
\*  Service Board of Immigration Appeals.
\*  
\*  
\*  
\*  

_____

Submitted: November 18, 2004
Filed: January 25, 2005

_____

Before WOLLMAN and HEANEY, Circuit Judges, and HOLMES,[1] District Judge.

_____

WOLLMAN, Circuit Judge.

Antonio Reyes-Vasquez petitions for review of the determination of the Immigration Judge (IJ) and the Board of Immigration Appeals (BIA) that he is not entitled to cancellation of removal under 8 U.S.C. § 1229b(b). He asserts, however, that we may not reach the merits of his claim until the BIA issues a reasoned opinion because, he argues, the BIA's affirmance without opinion procedure is unconstitutional under separation of powers principles. We hold that our precedent

_____

[1]The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas, sitting by designation.

answers the constitutional question. We grant his petition as to the cancellation of removal issue and remand for further proceedings consistent with this opinion.[2]

# I.

Reyes-Vasquez, a native and citizen of Mexico, first entered the United States illegally from Mexico on April 1, 1984. He returned to Mexico for about two weeks in August 1990 to attend to his ailing grandfather. He attempted to reenter the United States on September 15, 1990, and was arrested by the United States Border Patrol. He testified that the Border Patrol locked him in a cell for several hours and then put him "back over the line again" without telling him that he would otherwise have to go before a judge. Later that day, he successfully reentered the United States illegally. He remained in the Chicago area until 1999, when he moved to Minnesota. He received a notice to appear, initiating removal proceedings, on March 20, 2000. Reyes-Vasquez conceded that he was removable, but applied for relief in the form of cancellation of removal under 8 U.S.C. § 1229b(b)(1)(A).[3] The IJ found Reyes-Vasquez credible and stated that Reyes would have been entitled to cancellation of removal except for the fact that his voluntary return to Mexico in 1990 interrupted his period of continuous physical presence in the United States and caused it to be less

---

[2]We deny as moot the petitioner's motion for stay of removal, subject to petitioner's right to renew it if necessary, based on the Government's representation that an administrative stay of removal is in place pending our disposition of this appeal. We deny as untimely his motion for stay of voluntary departure. See Rife v. Ashcroft, 374 F.3d 606, 616 (8th Cir. 2004).

[3]To be eligible for cancellation of removal, an alien must be "physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application," must be "a person of good moral character," must not have been convicted of certain offenses, and must show that his removal "would result in exceptional and extremely unusual hardship" to a member of his immediate family who is a citizen or lawful permanent resident. 8 U.S.C. § 1229b(b)(1)(A)-(D).

than the statutorily required 10 years. Reyes-Vasquez was denied cancellation of removal on that basis. The BIA issued a summary affirmance on August 22, 2003.

Reyes-Vasquez and his wife have three sons, one of whom is a United States citizen and suffers from learning disabilities.

## II.

### A.

As our precedent makes clear, the BIA's choice to use the affirmance without opinion procedure does not affect our ability to review this case. Reyes-Vasquez argues that the procedure, 8 C.F.R. § 1003.1(e)(4) (2003),[4] is an unconstitutional violation of separation of powers principles. We have rejected prior challenges to the procedure, grounded in due process concerns, and conclude that the present challenge presents no novel issues and must also fail. See Dominguez v. Ashcroft, 336 F.3d 678, 680 (8th Cir. 2003) (holding that the IJ's decision satisfies the requirement set out in SEC v. Chenery, 332 U.S. 194, 196-97 (1947), that an agency must set forth the grounds for its conclusions).

Reyes-Vasquez's separation of powers claim fails because nothing in the challenged regulation changes the relationship between the three branches of government, for the regulation merely adjusts intra-agency procedures. See 8 C.F.R. § 1003.1 (establishing the organization, jurisdiction and powers of the BIA). The Attorney General, a member of the executive branch, acts within his authority delegated by Congress when he creates and interprets regulations to accomplish his immigration management task. See 5 U.S.C. § 301 (stating that the head of an executive department "may prescribe regulations for the government of his

---

[4]The regulation states that the Board member assigned a case "shall affirm" if he finds that certain criteria are met and that he "shall not include further explanation or reasoning" but shall state that "[t]he decision below is, therefore, the final agency determination." 8 C.F.R. 1003.1(e)(4).

department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property."); 8 U.S.C. § 1103 (assigning the duties to the Attorney General in the immigration context, including duties to establish regulations, review immigration proceedings and "delegate such authority" as he deems necessary). The Attorney General therefore acts within his authority when he delegates intra-agency to accomplish the duties given to him by Congress. Whether multiple layers of independent review and analysis at the administrative level are necessary is therefore a due process question, not a separation of powers question, and is controlled by our precedent. See Loulou v. Ashcroft, 354 F.3d 706, 708 (8th Cir. 2003); Dominguez, 336 F.3d at 680.

**B.**

An alien may apply for relief in the form of cancellation of removal if he meets the requirements set out in 8 U.S.C. § 1229b(b). We conclude that we have jurisdiction to consider Reyes-Vasquez's contention that the IJ improperly found him ineligible for such relief. Although the decision to grant cancellation of removal is a discretionary act by the Attorney General that we may not review, 8 U.S.C. § 1252(a)(2)(B); Halabi v. Ashcroft, 316 F.3d 807, 808 (8th Cir. 2003) (per curiam), we may consider the predicate legal question whether the IJ properly applied the law to the facts in determining an individual's eligibility to be considered for the relief. See Morales-Morales v. Ashcroft, 384 F.3d 418, 421-22 (7th Cir. 2004); Mireles-Valdez v. Ashcroft, 349 F.3d 213, 216-17 (5th Cir. 2003) (holding that the continuous presence requirement "is a nondiscretionary determination because it involves straightforward statutory interpretation and application of law to fact"). In doing so, we give substantial deference to the agency's interpretation of immigration statutes. See Alfolayan v. INS, 219 F.3d 784, 787 (8th Cir. 2000). Here, the IJ did not exercise discretionary authority because he determined that Reyes-Vasquez was ineligible for the relief. The IJ concluded that Reyes-Vasquez met all the requirements except one: he had not "been physically present in the United States for a continuous period of

-4-

not less than 10 years immediately preceding the date of such application." 8 U.S.C. § 1229b(b)(1)(A). As indicated above, the IJ stated that if Reyes-Vasquez had met the ten-year requirement, "the Court would grant this application for cancellation of removal."

An alien's continuous period of physical presence in the United States may be cut off or broken in several ways. It stops accruing when an alien receives a notice to appear from the INS. 8 U.S.C. § 1229b(d)(1). It is broken if the petitioner has committed certain crimes or "has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days." 8 U.S.C. § 1229b(d)(2). Our case law establishes that it is also broken "when an alien voluntarily departs under threat of deportation." Palomino v. Ashcroft, 354 F.3d 942, 944 (8th Cir. 2004) (finding reasonable the BIA's interpretation in In re Romalez-Alcaide, 23 I. & N. Dec. 423 (2002)).

In this case, it is clear that Reyes-Vasquez was not out of the country more than 90 days, as he returned to Mexico for only about two weeks to visit his ailing grandfather. The principal question we must resolve, therefore, is whether Reyes-Vasquez's experience at the border in 1990 constituted voluntary departure "under threat of deportation" so as to legally break his continuous period of physical presence in the United States. We conclude that the record is insufficient to establish that such a voluntary departure occurred.

As indicated above, voluntary departure under threat of deportation is the form of departure that breaks continual presence. See Palomino, 354 F.3d at 944; Morales-Morales, 384 F.3d at 426. That language implies that there is an expressed and understood threat of deportation. When an alien is legally permitted to depart voluntarily, he should "leave[ ] with the knowledge that he does so in lieu of being placed in proceedings" and therefore has no legitimate expectation that he may

-5-

reenter and resume continuous presence.  In re Romalez-Alcaide, 23 I. & N. Dec. 423, 429 (2002) (en banc).

"There is a significant difference between . . . the Border Patrol simply turning [the alien] back at the border and voluntary departure under threat of removal proceedings."  Morales-Morales, 384 F.3d at 427.  In cases in which a finding of a break in continuous presence has been upheld, the threat of deportation was expressed and understood by the alien.  See Palomino, 354 F.3d at 943 (INS officials "gave [Palomino] the option of voluntarily departing or facing formal administrative deportation proceedings"); Mireles-Valdez, 349 F.3d at 214 (Mireles-Valdez "agreed to accept an administrative voluntary departure; and was returned to Mexico without having proceedings brought against him"); Vasquez-Lopez v. Ashcroft, 343 F.3d 961, 969 (9th Cir. 2003) (per curiam) (Vasquez-Lopez was arrested, admitted deportability, requested voluntary departure, and was escorted to Mexico by the Border Patrol), *amending* 315 F.3d 1201 (9th Cir. 2003).  The alien is unlikely to have understood the threat and its consequences, however, if the record fails to establish that any communication about the possibility of deportation occurred and the alien credibly testifies that he was simply released back over the border.  See Morales-Morales, 384 F.3d at 427 (noting Morales-Morales's testimony that the Border Patrol "just took me, threw me around, and turned me back").

In 1990, the U.S. Border Patrol had the authority to grant voluntary departure to an alien "[w]ho is a native of a foreign contiguous territory" such as Mexico.  See 8 C.F.R. § 242.5 (1990).  Voluntary departures, which are formal and legally binding grants, were commonly documented in an alien's file, see Deportation Officer's Handbook, Immigration and Naturalization Service (Handbook), Ch. 1, ¶ 1-4 (1986), even though extensive docket control was not necessary for cases involving immediate departure.  Id. at ¶ 1-2 (noting that I-274/274A and "satisfactory departure" cases do not require docket control).  The Handbook stated:

When an alien has been granted voluntary departure and removed at Government expense, care should be taken to leave written evidence in the alien's file indicating the date of removal and the cost of the removal. Form I-274/274A has a portion devoted to this at the bottom of the form. Cases, other than I-274/274A cases, should have a memo to the file indicating the above information.

Id. at ¶ 1-4.[5] If no government expense was involved, however, a "satisfactory departure" was often just "noted on the reverse of the alien's Form I-94" and not otherwise recorded. See Detention and Deportation Officers' Field Manual, Department of Homeland Security, Ch. 11.8 (2002) (noting that the practice was common prior to 1997).

_____

[5]Notably, the current versions of these documents make the requirements of documentation and communication more clear, noting the need to establish that the alien "was fully aware of the terms and conditions attached to the grant." Detention and Deportation Officers' Field Manual Ch. 11.8 (2002) (Field Manual). The Department of Homeland Security regulation states that "[e]very decision regarding voluntary departure shall be communicated in writing on Form I-210, Notice of Action—Voluntary Departure. Voluntary departure may not be granted unless the alien requests such voluntary departure and agrees to its terms and conditions." 8 C.F.R. § 240.25 (2004). In addition, the Field Manual clarifies that:

[i]t is most important that arresting officers understand and communicate to aliens being granted voluntary departure that failure to depart under the terms given will not only result in the alien being placed in removal proceedings, but will also preclude him or her from receiving any grant ov voluntary departure for a period of 10 years, . . . .

*It is essential that no voluntary departure period be granted without issuance of Form I-210 (Rev 4/1/97) and that the affected alien be made aware of and agree to the terms of such a grant.*

Field Manual Ch. 11.8 (emphasis in original).

We conclude that before it may be found that a presence-breaking voluntary departure occurred, the record must contain some evidence that the alien was informed of and accepted its terms. When viewed in the light of this requirement, we believe that the facts of this case are more analogous to the facts in Morales-Morales, 384 F.3d 418, than Palomino, 354 F.3d 942. Reyes-Vasquez credibly testified that he was detained by the Border Patrol but did not go before an IJ and was not told that he would have to go to court. He stated only that he was briefly detained, fingerprinted, and placed on a bus heading back into Mexico, from where he reentered the United States again that very evening.[6] Lacking any further details regarding the circumstances under which Reyes-Vasquez returned to Mexico, the record is insufficient to support a finding that Reyes-Vasquez knowingly agreed to administrative voluntary departure under 8 U.S.C. § 1252(b)(4) (1990) and was made aware that he would otherwise face removal proceedings.

If Reyes-Vasquez was "simply returned to the border" without voluntarily departing under an expressed threat of deportation or removal proceedings, his departure did not constitute a break in his continuous physical presence. See Morales-Morales, 384 F.3d at 428. Accordingly, we remand to the agency for

---

[6]At oral argument, the government cited Form I-213 ("Record of Deportable/ Inadmissible Alien") as proof of Reyes-Vasquez's voluntary departure. See A.R. 510. Special Agent Michael Diaz filled out the form after Reyes-Vasquez was arrested for driving while intoxicated in March 2000. The agent's notes on the form, presumably based on an interview with Reyes-Vasquez, summarize Reyes-Vasquez's 1990 border arrest in the following terms: "[s]ubject read his administrative rights outloud and states that he understood them. Subject requested a voluntary return to Mexico." The information in this document, if acknowledged by Reyes-Vasquez to be correct and if further developed with respect to the rights that he was advised of, might support a finding that Reyes-Vasquez's September 5, 1990, return to Mexico did indeed constitute a voluntary departure that broke his continue presence in this country. As it is, however, under the standard we have articulated above, the form alone does not override Reyes-Vasquez's credible testimony to the contrary.

specific factual findings on that question and for further proceedings consistent therewith.

_____