08-3058-ag
Ascencio-Rodriguez v. Holder

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: May 8, 2009                                    Decided: February 17, 2010 )

Docket No. 08-3058-ag

JESUS ASCENCIO-RODRIGUEZ,

*Petitioner*,

v.

ERIC H. HOLDER, JR., Attorney General of the United States,[*]

*Respondent.*

Before: WALKER,[**] CABRANES, and WALLACE,[***] *Circuit Judges.*

Petitioner Jesus Ascencio-Rodriguez ("Ascencio-Rodriguez" or "petitioner") seeks review of a

May 22, 2008 decision by the Board of Immigration Appeals affirming the November 3, 2006 judgment

of an Immigration Judge, which denied his application for cancellation of removal but granted his

request for voluntary departure.  We hold, in a question of first impression in this Circuit, that, for the

purposes of cancellation of removal eligibility under 8 U.S.C. § 1229b(b)(1)(A), petitioner's arrest and

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric. H. Holder, Jr. is automatically substituted for former Attorney General Michael B. Mukasey as respondent in this case.

[**] The Honorable Sonia Sotomayor, originally a member of the panel, was elevated to the Supreme Court on August 8, 2009.  The Honorable John M. Walker was designated as the third member of this panel.  *See* Second Circuit Internal Operating Procedure E(b) (formerly § 0.14(b) of the Local Rules).

[***] The Honorable J. Clifford Wallace, of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

conviction for illegal entry into the United States and his subsequent departure to Mexico interrupted his period of "continuous physical presence" in the United States. Accordingly, we deny Ascencio-Rodriguez's petition.

ROBERT C. ROSS, West Haven, CT, *for Petitioner Jesus Ascencio-Rodriguez*.

CHRISTINA BECHAK PARASCANDOLA, Trial Attorney, Office of Immigration Litigation (Gregory G. Katsas, Assistant Attorney General, Civil Division, and Richard M. Evans, Assistant Director, Office of Immigration Litigation, *on the brief*), United States Department of Justice, Washington, DC, *for Respondent*.

JOSÉ A. CABRANES, *Circuit Judge*:

Petitioner Jesus Ascencio-Rodriguez ("Ascencio-Rodriguez" or "petitioner") seeks review of a May 22, 2008 decision by the Board of Immigration Appeals ("BIA") affirming the November 3, 2006 judgment of an Immigration Judge ("IJ"), which denied petitioner's application for cancellation of removal but granted his request for voluntary departure. Petitioner asserts that the IJ and the BIA erred in concluding that his arrest and conviction for illegal entry into the United States in February 2001 interrupted his "continuous physical presence" in the United States and thereby rendered him ineligible for cancellation of removal pursuant to 8 U.S.C. § 1229b(b). Whether a conviction for illegal entry is a "formal, documented process" pursuant to which an alien is determined to be inadmissible, *see In re Avilez-Nava*, 23 I. & N. Dec. 799, 801 (B.I.A. 2005) (*en banc*)—and, if so, whether such a process interrupts an alien's continuous physical presence in the United States—are issues of first impression in this Circuit. We conclude that petitioner's conviction and subsequent return to Mexico did interrupt his continual physical presence and therefore the BIA properly concluded that he is ineligible for cancellation of removal.

2

## BACKGROUND

Petitioner was born in Mexico in 1969 and first came to the United States in April 1989. At some point in June or July of 1994, he was arrested by an immigration officer and "given a document" to leave the country. He contends that he returned to the United States in April 1995. Petitioner returned to Mexico again in 1998 to get married and re-entered the United States shortly thereafter without incident.

Petitioner claims that he next left for Mexico in early February 2001 to visit his ailing mother and thereafter was arrested three times by the Border Patrol when trying to re-enter the United States. The second of these three arrests occurred on February 20, 2001, near Brownsville, Texas. Petitioner admits that in connection with that attempt to re-enter, he paid $2500 for fraudulent documents—including a border crossing card in the name of Raphael Sanchez-Sanchez—that he could show to the Border Patrol. Upon questioning by the Border Patrol, petitioner apparently gave his correct name and was then arrested at the checkpoint.

Petitioner was charged that same day with entering the United States illegally in violation of 8 U.S.C. § 1325(a)(1).[1] He appeared before a magistrate judge in the United States District Court for the Southern District of Texas (the "District Court"), and the record shows that he waived his right to counsel and pleaded guilty to illegal entry. Petitioner also signed a separate "Notice of Rights and Request for Disposition" form on that same day. That document advised petitioner that he had the right to a hearing before the Immigration Court or, in the alternative, the right to return to Mexico without a hearing. Petitioner checked the box on that form requesting a hearing before the

---

[1] This statute provides, in relevant part, that "[a]ny alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers . . . shall, for the first commission of any such offense, be fined under title 18 or imprisoned not more than 6 months, or both, and, for a subsequent commission of any such offense, be fined under title 18 or imprisoned not more than 2 years, or both." 8 U.S.C. § 1325(a).

3

Immigration Court but a hearing was never conducted. A Notice to Appear was also prepared on February 20, 2001, although it does not appear to have been filed with the Immigration Court and the parties dispute whether it was ever served on Ascencio-Rodriguez.

The record is less than clear with respect to events that followed. Petitioner's judgment of conviction, entered on February 28, 2001, indicates that he was sentenced to 90 days' imprisonment, but the judgment also states that the "execution" of the sentence was suspended and that Ascencio-Rodriguez was "placed on probation without supervision for a period of three (3) years, conditioned on no further violation of federal and/or state laws." J.A. 206. A Record of Deportable/Inadmissible Alien form produced by the government also indicates that on February 20, 2001 petitioner was granted a "Voluntary Return in lieu of prosecution." J.A. 157. According to petitioner's testimony before the IJ, after appearing in court and signing some documents, he was placed on a bus and returned to Mexico on the same day of his arrest.

Petitioner attempted to re-enter the United States on March 5, 2001 but was arrested again by the Border Patrol. He asserts that he attempted to re-enter the United States for a fourth time on April 20, 2001 and successfully evaded the Border Patrol.

On May 19, 2005, the Department of Homeland Security in Vermont issued petitioner a Notice to Appear, in which it charged him with removability under 8 U.S.C. § 1182(a)(6)(A)(i)[2] as an alien present without being admitted or paroled, and under 8 U.S.C. § 1182(a)(7)(B)(i)(II)[3] as a nonimmigrant

---

[2] This provision provides that "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." 8 U.S.C. § 1182(a)(6)(A)(i).

[3] This provision provides, in relevant part: "Any nonimmigrant who . . . is not in possession of a valid nonimmigrant visa or border crossing identification card at the time of application for admission, is inadmissible." 8 U.S.C. § 1182(a)(7)(B)(i)(II).

Petitioner was charged with removability on the ground that he was "inadmissible" to the United States, notwithstanding the fact that he was present in the country and had been for years. This is possible because aliens, such as petitioner, whose entry into the United States was not lawful or authorized are not considered "admitted" into the

4

who was not in possession of a valid visa or border crossing card at the time of application for admission. Petitioner appeared before an IJ three different times in late 2005 and early 2006 and on April 20, 2006, petitioner stated that he would seek "cancellation of removal" under 8 U.S.C. § 1229b(b)(1).[4] Petitioner subsequently submitted an application and supporting documents.

On November 3, 2006, petitioner appeared before the IJ for a hearing on the merits of his application for cancellation of removal. The IJ issued an oral opinion that same day, in which he

---

United States. *See Ibragimov v. Gonzales*, 476 F.3d 125, 131 (2d Cir. 2007) (citing 8 U.S.C. § 1101(a)(13(A)). Aliens not admitted are treated as "applicants for admission." *See* 8 U.S.C. § 1225(a)(1). They are "deemed to be legally at the border" and bear the burden of establishing their entitlement to admission. *See Ibragimov*, 476 F.3d at 131 (citing 8 U.S.C. § 1229a(c)(2)); *see also Bertrand v. Sava*, 684 F.2d 204, 205 n.1 (2d Cir. 1982) (explaining that an alien not formally admitted to the United States, "[e]ven though physically present in the country, . . . is 'treated as if stopped at the border'" and as having gained "no foothold in this country" (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953))).

It is well established that aliens detained at the border are not entitled to the same protections as those who have been admitted into the United States. As the Supreme Court has explained:

> The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law. *See Kaplan v. Tod*, 267 U.S. 228, 230 (1925) (despite nine years' presence in the United States, an "excluded" alien "was still in theory of law at the boundary line and had gained no foothold in the United States"); *Leng May Ma v. Barber*, 357 U.S. 185, 188-190 (1958) (alien "paroled" into the United States pending admissibility had not effected an "entry"). It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders.

*Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Providing aliens at the border with more limited procedural protections than persons "admitted" to the United States is not only rooted in precedent, it is also essential to the effective administration of our immigration laws.

[4] This provision provides, in relevant part, as follows:

The Attorney General may cancel removal of . . . an alien who is inadmissible or deportable from the United States if the alien—

> (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
>
> (B) has been a person of good moral character during such period;
>
> (C) has not been convicted of an offense under [8 U.S.C. § 1182(a), § 1227(a)(2), or § 1227(a)(3)], subject to paragraph (5); and
>
> (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b)(1).

denied petitioner's application for cancellation of removal on the basis that petitioner was statutorily ineligible for cancellation because he had not met his burden of establishing ten years' continuous physical presence in the United States, as required by 8 U.S.C. § 1229b(b)(1)(A).

In connection with his holding, the IJ made two relevant findings. First, after noting that continuous physical presence ends when an alien departs the United States under the threat of initiation of removal proceedings, the IJ found that petitioner departed the United States under the threat of such proceedings at least three times in 2001 and, accordingly, had ended his "physical presence" in the United States within the meaning of § 1229b(b)(1)(A). Second, the IJ found that petitioner's continuous physical presence was interrupted after his arrest at the border in mid-February 2001 because it resulted in a process by which he was determined to be inadmissible to the United States.

Petitioner filed a timely notice of appeal to the BIA. On May 22, 2008, the BIA adopted and affirmed the IJ's decision. The BIA noted that it had previously

> held that an immigration official's refusal to admit an alien at a land border port of entry will constitute a break in the alien's continuous physical presence if there is evidence that the alien was formally excluded or made subject to an order of expedited removal, was offered and accepted the opportunity to withdraw his application for admission, or was subjected to any other formal, documented process pursuant to which the alien was determined to be inadmissible to the United States.

J.A. 2 (citing *In re Avilez-Nava*, 23 I. & N. Dec. 799). The BIA then noted that petitioner was arrested on February 20, 2001 and concluded that the evidence established that petitioner "was subjected to a formal, documented process and determined to be inadmissible." J.A. 3. Accordingly, the BIA determined that the petitioner was ineligible for cancellation of removal because he could not show that he had been physically present in the United States for a continuous period of not fewer than ten years. This petition timely followed.

6

**DISCUSSION**

"Where, as here, the BIA adopts the IJ's reasoning and offers additional commentary, we review the decision of the IJ as supplemented by the BIA." *Wala v. Mukasey*, 511 F.3d 102, 105 (2d Cir. 2007). We review the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard, treating them as "conclusive unless *any* reasonable adjudicator would be *compelled* to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B) (emphases added). We review *de novo* questions of law and applications of law to undisputed fact. *See Chambers v. Office of Chief Counsel*, 494 F.3d 274, 277 (2d Cir. 2007).

**I.**

Aliens who are present in the United States but have not attained permanent resident status and are subject to removal may petition for cancellation of removal pursuant to 8 U.S.C. § 1229b(b). *See* note 4, *ante*. To be eligible for cancellation of removal under this subsection, an alien must, *inter alia*, have been "physically present in the United States for a continuous period of not less than 10 years" prior to seeking cancellation of removal. 8 U.S.C. § 1229b(b)(1)(A). Despite the statute's requirement of "continuous" physical presence, short breaks in "continuity" do not render an alien ineligible for cancellation. *See* 8 U.S.C. § 1229b(d) (explaining that a single departure in excess of 90 days, or multiple departures exceeding 180 days in the aggregate, break an alien's continuous physical presence). The cancellation statute also provides that "any period of continuous residence or continuous physical presence in the United States shall be deemed to end (A) . . . when the alien is served a notice to appear under [8 U.S.C. § 1229(a)], or (B) when the alien has committed an offense referred to in [8 U.S.C. § 1182(a)(2)][5] that renders the alien inadmissible to the United States." 8 U.S.C. § 1229b(d)(1).

---

[5] Section 1182 provides, in relevant part:

[A]ny alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of—

7

In addition to the conditions set forth in these statutory provisions, the BIA has held that certain other events break a period of "continuous physical presence." In *In re Romalez-Alcaide*, for example, the BIA held that a voluntary departure under the threat of deportation also breaks an alien's continuous physical presence. 23 I. & N. Dec. 423 (B.I.A. 2002) (*en banc*). The BIA reasoned that it would be "contrary to the overall objectives of the [Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA")] to allow an alien to continue to accrue time for purposes of obtaining relief after the alien departs under a formal order of deportation or removal, or under the threat of such an order." *Id.* at 429. The holding of *In re Romalez-Alcaide* has been upheld by all of the Courts of Appeals that have had occasion to consider it. *See Mendez-Reyes v. Attorney Gen.*, 428 F.3d 187, 191-92 (3d Cir. 2005) (holding that the BIA's construction of the statute was entitled to deference under *Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984), and that its construction was reasonable); *Morales-Morales v. Ashcroft*, 384 F.3d 418, 427 (7th Cir. 2004) ("We have no quarrel with *Romalez-Alcaide*'s rule that voluntary departure under threat of deportation or removal proceedings . . . constitutes a break in continuous physical presence . . . ."); *Palomino v. Ashcroft*, 354 F.3d 942, 944 (8th Cir. 2004) (holding *In re Romalez-Alcaide* to be a reasonable interpretation of the immigration code);

---

> (I) a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime, or
>
> (II) a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in [21 U.S.C. § 802]),
>
> is inadmissible.

8 U.S.C. § 1182(a)(2)(A)(i).

Petitioner's illegal entry into the United States in violation 8 U.S.C. § 1325(a)(1) does not constitute a violation of a law "relating to a controlled substance." 8 U.S.C. § 1182(a)(2)(A)(i)(II). Nor does the government argue that the offense of illegal entry is a "crime involving moral turpitude" within the meaning of 8 U.S.C. § 1182(a)(2)(A)(i)(I). *Cf. Mendez v. Mukasey*, 547 F.3d 345, 347 (2d Cir. 2008) ("The BIA has defined moral turpitude generally to encompass conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." (internal quotation marks omitted)). Therefore, we do not consider whether petitioner's conviction for this offense could automatically terminate his continuous physical presence pursuant to 8 U.S.C. § 1229b(d)(1)(B).

*Mireles-Valdez v. Ashcroft*, 349 F.3d 213, 218 (5th Cir. 2003) (same); *Vasquez-Lopez v. Ashcroft*, 343 F.3d 961, 973 (9th Cir. 2003) ("We conclude that the BIA's and the Attorney General's reading of the statute is a reasonable one, worthy of our deference.").

Although no Court of Appeals has rejected the central holding of *In re Romalez-Alcaide*, several have held that it does not apply in cases where an alien is simply turned away at the border. In *Reyes-Vasquez v. Ashcroft*, for example, the Eighth Circuit held that, for *In re Romalez-Alcaide* to apply, the threat of deportation, and its consequences, must be expressed to and understood by the alien. 395 F.3d 903, 907 (8th Cir. 2005). According to the Eighth Circuit, this understanding is generally absent when an alien is turned away at the border, and therefore frustrated entries ordinarily do not qualify as "voluntary departures" under a threat of deportation so as to operate to break an alien's "continuous physical presence" in the United States. *See id.* at 908 ("[B]efore it may be found that a presence-breaking voluntary departure occurred, the record must contain some evidence that the alien was informed of and accepted its terms."); *see also Morales-Morales*, 384 F.3d at 427.

The BIA again considered the circumstances that may constitute a break in continuous physical presence in *In re Avilez-Nava*, 23 I. & N. Dec. 799. In that case, the BIA explicitly adopted the holdings of the Eighth Circuit in *Reyes-Vasquez* and the Seventh Circuit in *Morales-Morales* in concluding that being turned back at the border "without formal acceptance of the terms 'voluntary return' or 'voluntary departure' does not break an alien's continuous physical presence." *Id.* at 805. The BIA thus held that

> an immigration official's refusal to admit an alien at a land border port of entry will not constitute a break in the alien's continuous physical presence, unless there is evidence that the alien was formally excluded or made subject to an order of expedited removal, was offered and accepted the opportunity to withdraw his or her application for admission, *or was subjected to any other formal, documented process pursuant to which the alien was determined to be inadmissible to the United States.*

*Id.* at 805-06 (emphasis added).

9

The BIA did not explain what might qualify as a "*formal, documented process* pursuant to which the alien was determined to be inadmissible," *id.* (emphasis added), but it added that the following evidence might suffice to demonstrate such a process:

> *testimony or documentary* evidence of a legally enforced refusal of admission and return such as a Record of Deportable/Inadmissible Alien (Form I-213), a Notice of Action—Voluntary Departure (Form I-210), an IDENT printout, affidavits or statements of the alien or immigration officials, photographs, fingerprints, or other appropriate forms and official records of the DHS.

*Id.* at 806 (emphasis added). The BIA cautioned, however, that if "the evidence indicates that the alien's encounter with immigration authorities involves nothing more than being returned to the border following refusal of admission for failure to have proper documents, the encounter does not break continuous physical presence." *Id.* In *Tapia v. Gonzales*, the Ninth Circuit, in the only reported decision to have considered the BIA's "formal, documented process" requirement, held that the acts of fingerprinting and photographing an alien do not transform a border "turnaround" into a formal, documented process that breaks an alien's period of continuous physical presence. 430 F.3d 997, 1004 (9th Cir. 2005).

## II.

Our Court has not yet had the opportunity to apply the BIA's decisions in *In re Romalez-Alcaide* and *In re Avilez-Nava*. We hold today that the BIA's interpretation of the cancellation of removal statute expressed in both of those decisions is reasonable and is entitled to *Chevron* deference. *See Chevron*, 467 U.S. at 842-43 ("If . . . Congress has not directly addressed the precise question at issue . . . the question for the court is whether the agency's answer is based on a permissible construction of the statute."). Under the first step of the *Chevron* analysis, we conclude that, although 8 U.S.C. § 1229b(d) sets forth "circumstances under which continuous physical presence *must* be deemed to have been

10

broken," Congress has not spoken on whether other events can also operate to terminate an alien's period of "continuous physical presence." *See Mendez-Reyes*, 428 F.3d at 191-92. We further hold, under the second step of *Chevron*, that the BIA's interpretations of § 1229b in *In re Romalez-Alcaide* and *In re Avilez-Nava* are permissible constructions of the statute and thus entitled to deference. *See Chevron*, 467 U.S. at 844 ("We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer . . . ."). We next consider whether petitioner in this case was subjected to a "formal, documented process" pursuant to which he was determined inadmissible to the United States. *In re Avilez-Nava*, 23 I. & N. Dec. at 805-06.

### III.

As the IJ noted, the circumstances of petitioner's arrest on February 20, 2001 and his subsequent departure from the United States are, on this record, somewhat of a mystery. The record reveals with certainty, however, the following facts: Petitioner was arrested in the early morning hours of February 20, 2001 while attempting to enter the United States. He was subsequently charged in the District Court with improper entry in violation of 8 U.S.C. § 1325(a), *see* note 1, *ante*, and he pleaded guilty to that offense. He was given a suspended sentence of 90 days' imprisonment and at some point returned to Mexico. Immigration records state that petitioner was "granted a Voluntary Return in lieu of prosecution." J.A. 157. This sequence of events is a far cry from merely being turned back at the border. Accordingly, we have no difficulty concluding that petitioner departed after being subjected to a "formal, documented process" by which he was determined inadmissible, *see In re Avilez-Nava*, 23 I. & N. Dec. at 805-06, which terminated his period of continuous physical presence.

Petitioner does not dispute that his conviction was the product of a "formal, documented process," but he does contend that the conviction has no bearing on his admissibility. Although he

11

correctly notes that the statute under which he was convicted, 8 U.S.C. § 1325(a)(1), *see* note 1, *ante*, makes no reference to *admissibility*, its language almost mirrors the definition of *inadmissibility* contained in 8 U.S.C. § 1182(a)(6)(A)(i). *Compare* 8 U.S.C. § 1325(a)(1) (applying to "[a]ny alien who . . . enters or attempts to enter the United States at any time or place other than as designated by immigration officers"), *with* 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien . . . who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."). Accordingly, his conviction following his plea of guilty constituted an admission to facts that rendered him inadmissible under § 1182(a)(6)(A)(i).

Petitioner responds that there are exceptions by which an otherwise inadmissible alien might be deemed admissible, and therefore a conviction under 8 U.S.C. § 1325 cannot categorically be considered an adjudication of admissibility. Section 1182, for example, exempts certain battered women and children from the definition of inadmissible. *See* 8 U.S.C. § 1182(a)(6)(A)(ii).[6] Moreover, under 8 U.S.C. § 1255(i), aliens who enter the United States without inspection may apply to the Attorney General for an adjustment of status if they are the beneficiary of a petition for classification

---

[6] This subsection provides as follows:

[Section 1182(a)(6)(A)(i)] shall not apply to an alien who demonstrates that—

   (I) the alien is a VAWA [(the Violence Against Women Act of 1994)] self-petitioner;

   (II) (a) the alien has been battered or subjected to extreme cruelty by a spouse or parent, or by a member of the spouse's or parent's family residing in the same household as the alien and the spouse or parent consented or acquiesced to such battery or cruelty, or (b) the alien's child has been battered or subjected to extreme cruelty by a spouse or parent of the alien (without the active participation of the alien in the battery or cruelty) or by a member of the spouse's or parent's family residing in the same household as the alien when the spouse or parent consented to or acquiesced in such battery or cruelty and the alien did not actively participate in such battery or cruelty, and

   (III) there was a substantial connection between the battery or cruelty described in subclause (I) or (II) and the alien's unlawful entry into the United States.

8 U.S.C. § 1182(a)(6)(A)(ii).

filed by a citizen or the beneficiary of an application for a labor certification. *See* 8 U.S.C. § 1255(i)(1).[7]

And finally, an otherwise removable alien may seek cancellation of removal under 8 U.S.C. § 1229b(b), *see* note 4, *ante*—as petitioner sought to do in these proceedings. None of these exceptions, however, could have applied to petitioner at the time of his conviction in 2001. He could not have availed himself of the procedures available to battered women and children, *see* 8 U.S.C. § 1182(a)(6)(A)(ii); he does not claim to be the beneficiary of any petition for classification or an application for a labor certification, *see* 8 U.S.C. § 1255(i); and he was ineligible for cancellation of removal because he had not, at the time of his conviction, maintained continuous physical presence in the United States for a period of 10 years, *see* 8 U.S.C. § 1229b(b)(1)(B). Although in theory a conviction under 8 U.S.C. § 1325 may not conclusively determine an alien's admissibility in every case, in light of the statutory exceptions noted above, there is no question that, in this case, petitioner's conviction after a plea of guilty to violating 8 U.S.C. § 1325(a)(1) constituted an admission of facts that rendered him inadmissible.

---

[7] This subsection permits the Attorney General to adjust the immigration a status of an alien who entered the United States "without inspection" by an immigration officer, *see* 8 U.S.C. § 1225(b) (describing procedures for inspection), provided that, *inter alia*, the alien:

> (B) [ ] is the beneficiary (including a spouse or child of the principal alien, if eligible to receive a visa under [8 U.S.C. § 1153(d)]) of—
>
>> (i) a petition for classification under [8 U.S.C. § 1154] that was filed with the Attorney General on or before April 30, 2001; or
>>
>> (ii) an application for a labor certification under [8 U.S.C. § 1182(a)(5)(A)] that was filed pursuant to the regulations of the Secretary of Labor on or before such date; and
>
> (C) [ ] in the case of a beneficiary of a petition for classification, or an application for labor certification, described in subparagraph (B) that was filed after January 14, 1998, is physically present in the United States on [December 21, 2000.]

8 U.S.C. § 1255(i)(1).

The fact that the judgment of petitioner's conviction did not include an *explicit* finding of inadmissibility (which, in any event, would have served no purpose) is irrelevant where, in this case, it served as the functional equivalent of such a finding. To allow an alien to plead guilty to illegal entry, be convicted of the crime, leave the country, and yet continue to accrue "continuous physical presence" time within the meaning of our immigration laws would be contrary to the objectives of those laws and the BIA's relevant decisions. *See In re Avilez-Nava*, 23 I. & N. Dec. at 806 (explaining that formal orders of exclusion, expedited removal, and the withdrawal of an application for admission are all the equivalent of, or comparable to, an order of removal or voluntary return under the threat of removal); *In re Romalez-Alcaide*, 23 I. & N. Dec. at 429 ("We deem it contrary to the overall objectives of the IIRIRA to allow an alien to continue to accrue time for purposes of obtaining relief after the alien departs under . . . the threat of [a formal order of removal]."). Petitioner was subjected to a "formal, documented process" that went well beyond merely being turned back at the border and that was, therefore, sufficient to terminate his "continuous physical presence" within the meaning of 8 U.S.C. § 1229b(b)(1).[8]

**CONCLUSION**

To summarize, we hold that (1) the decisions of the Board of Immigration Appeals in *In re Romalez-Alcaide*, 23 I. & N. Dec. 423 (B.I.A. 2002) (*en banc*), and *In re Avilez-Nava*, 23 I. & N. Dec. 799 (B.I.A. 2005) (*en banc*), are reasonable interpretations of 8 U.S.C. § 1229b and entitled to *Chevron*

---

[8] We do not mean to suggest that the procedures followed by the government in this case were exemplary. Indeed, many of the records produced by immigration authorities in this case raise more questions than they answer. Nevertheless, it is apparent from the record before us that petitioner's departure was more akin to a formal removal than the informal interactions at the border that the BIA and other Courts of Appeals have found insufficient to terminate a period of continuous physical presence. *Cf. Tapia*, 430 F.3d at 999 (alien was turned away at the border after being fingerprinted, photographed, and having his information entered into a database); *Reyes-Vasquez*, 395 F.3d at 908 (alien was "briefly detained, fingerprinted, and placed on a bus heading back into Mexico"); *Morales-Morales*, 384 F.3d at 420 (alien explained that Border Patrol "just took me, threw me around, and turned me back"); *In re Avilez-Nava*, 23 I. & N. Dec. at 800 (alien was stopped at the border, taken to a room where a man explained she could not enter without documents, and escorted to a door "back across the border").

deference; and (2) petitioner's conviction for illegal entry in violation of 8 U.S.C. § 1325(a)(1) constituted a "formal, documented process" which, in this case, was the functional equivalent of an adjudication of inadmissibility and which, coupled with his return to Mexico, terminated his "continuous physical presence" in the United States within the meaning of 8 U.S.C. § 1229b(b)(1). Consequently, petitioner was properly deemed ineligible for "cancellation of removal" under that section.

Accordingly, the petition for review is **DENIED**.