# In re Guadalupe AVILEZ-Nava, Respondent

File A75 769 895 - Los Angeles

*Decided August 10, 2005*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)   Where an alien departed the United States for a period less than that specified in section 240A(d)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(d)(2) (2000), and unsuccessfully attempted reentry at a land border port of entry before actually reentering, physical presence continued to accrue for purposes of cancellation of removal under section 240A(b)(1)(A) unless, during that attempted reentry, the alien was formally excluded or made subject to an order of expedited removal, was offered and accepted the opportunity to withdraw an application for admission, or was subjected to some other formal, documented process pursuant to which the alien was determined to be inadmissible to the United States.

(2)   The respondent's 2-week absence from the United States did not break her continuous physical presence where she was refused admission by an immigration official at a port of entry, returned to Mexico without any threat of the institution of exclusion proceedings, and subsequently reentered without inspection.

FOR RESPONDENT:  Fabian C. Serrato, Esquire, Santa Ana, California

BEFORE:   Board En Banc:  SCIALABBA, Chairman;  OSUNA, Acting Vice Chairman; HOLMES, HURWITZ, FILPPU, COLE, GRANT, MOSCATO, MILLER, and HESS, Board Members.  Concurring Opinion:  PAULEY, Board Member.

GRANT, Board Member:

In a decision dated August 4, 2003, an Immigration Judge found the respondent removable and denied her application for cancellation of removal under section 240A(b) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(b) (2000). The respondent has appealed from that decision. The appeal will be sustained, and the record will be remanded to the Immigration Judge for further proceedings.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico who initially entered the United States in 1986 and resided here illegally.  The record reflects that she has two United States citizen children, ages 12 and 2 years old.

Removal proceedings were commenced against the respondent with a Notice to Appear (Form I-862) dated May 18, 2001.  At a hearing before an Immigration Judge, the respondent conceded removability and applied for cancellation of removal under section 240A(b) of the Act.  The respondent testified that she returned to Mexico one time, on January 3, 1993, to support her mother when her grandmother died.  When she attempted to enter through the San Ysidro port of entry 2 weeks later, she was stopped by immigration authorities.  She admitted that she had no entry documents and she was taken to a room where a man explained that she could not enter because she did not have documents.  She was then escorted to a door "back across the border," returned to Mexico, and entered illegally via the same port of entry in a vehicle 2 days later.  No evidence was offered by the Department of Homeland Security ("DHS").

The Immigration Judge denied the respondent's application, relying on our decision in *Matter of Romalez*, 23 I&N Dec. 423 (BIA 2002).  In that decision, we held that continuous physical presence is deemed to end at the time an alien is compelled to depart the United States under the threat of the institution of deportation or removal proceedings.  The Immigration Judge found that the respondent was statutorily ineligible for cancellation of removal under section 240A(b)(1)(A) of the Act because she could not establish the requisite 10 years of continuous physical presence as a result of her unsuccessful application for admission into the United States on January 3, 1993.

On appeal, the respondent argues that the Immigration Judge erred in concluding that she had not shown the requisite 10 years of continuous physical presence.  According to the respondent, she was simply told that she could not cross the border and was escorted to a door through which she returned to Mexico.  She therefore asserts that she was not compelled to depart the United States under the threat of the institution of deportation or removal proceedings, as was the case in *Matter of Romalez*, *supra*.  The DHS has not filed a response brief.

## II.  ISSUE

Our inquiry is whether the respondent has accrued the 10 years of continuous physical presence required to establish eligibility for cancellation of removal. We hold that an alien's continuous physical presence continues to accrue for purposes of section 240A(b)(1)(A) of the Act following his or her departure of a duration less than that specified in section 240A(d)(2) unless, upon return to a land border port of entry, the alien was formally excluded or made subject to an order of expedited removal, was offered and accepted the opportunity to

withdraw an application for admission, or was subjected to some other formal, documented process pursuant to which the alien was determined to be inadmissible to the United States. As the record does not establish that such an event occurred in this case, the respondent is not ineligible for cancellation of removal pursuant to section 240A(b)(1)(A).

## III.  RELEVANT LAW

An alien may be eligible for cancellation of removal if it is established, inter alia, that he or she "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date" of the application for relief. Section 240A(b)(1)(A) of the Act. The statute provides that the accrual of continuous physical presence is deemed to end when an alien is served a notice to appear. Section 240A(d)(1)(A) of the Act; *cf. Matter of Cisneros*, 23 I&N Dec. 668 (BIA 2004) (finding that service of the charging document that is the basis for the current proceeding stops the accrual of continuous physical presence, but that service of a charging document in a prior proceeding does not prevent the accrual of a new period of physical presence following the alien's departure and return). This "stop-time" rule is applicable in cases dealing with cancellation of removal, as well as those involving suspension of deportation. *Matter of Nolasco*, 22 I&N Dec. 632 (BIA 1999) (finding that service of an Order to Show Cause and Notice of Hearing (Form I-221) terminates physical presence for purposes of suspension of deportation);[1] *accord Matter of Mendoza-Sandino*, 22 I&N Dec. 1236, 1240 (BIA 2000).

Physical presence also terminates upon the commission of a specified criminal offense that renders the alien inadmissible or removable. Section 240A(d)(1)(B) of the Act. The offense must be one "referred to in section 212(a)(2)" of the Act, 8 U.S.C. § 1182(a)(2) (2000), in order to terminate the period of continuous physical presence required for cancellation of removal. *Matter of Campos-Torres*, 22 I&N Dec. 1289 (BIA 2000); *see also Matter of Perez*, 22 I&N Dec. 689 (BIA 1999) (finding that continuous residence or physical presence for cancellation of removal purposes is deemed to end on the date that a qualifying offense has been committed).

According to section 240A(d)(2) of the Act, an alien who has departed from the United States for any period in excess of 90 days, or for any periods in the

---

[1]  The Federal courts of appeals have uniformly accepted our ruling in *Matter of Nolasco*. *See Pinho v. INS*, 249 F.3d 183 (3d Cir. 2001); *Sad v. INS*, 246 F.3d 811(6th Cir. 2001); *Ram v. INS*, 243 F.3d 510 (9th Cir. 2001); *Rojas-Reyes v. INS*, 235 F.3d 115 (2d Cir. 2000); *Angel-Ramos v. INS*, 227 F.3d 942 (7th Cir. 2000); *Ayoub v. INS*, 222 F.3d 214 (5th Cir. 2000); *Afolayan v. INS*, 219 F.3d 784 (8th Cir. 2000); *Rivera-Jimenez v. INS*, 214 F.3d 1213 (10th Cir. 2000); *Appiah v. INS*, 202 F.3d 704 (4th Cir. 2000); *see also Tefel v. Reno*, 180 F.3d 1286 (11th Cir. 1999) (finding the "stop-time" rule constitutional without citing *Nolasco*).

aggregate exceeding 180 days, will be considered to have failed to maintain continuous physical presence.[2]  However, as we held in *Matter of Romalez*, *supra*, at 425, the statute "does not purport to be the *exclusive* rule respecting *all* departures."

In *Matter of Romalez* we addressed the alien's argument that pursuant to section 240A(d)(2) of the Act, his voluntary departures under the threat of deportation proceedings did not break his physical presence because he returned to the United States within a few days of each departure.  Considering the purpose of the removal provisions of the Act as a whole, we held that continuous physical presence is deemed to end at the time an alien is compelled to depart the United States under the threat of the institution of deportation or removal proceedings, even if the period of absence was within the time limits set forth in section 240A(d)(2).

Our ruling in *Matter of Romalez* has been upheld in the United States Courts of Appeals for the Fifth, Eighth, and Ninth Circuits. *Vasquez-Lopez v. Ashcroft*, 343 F.3d 961 (9th Cir. 2003) (holding that a departure under the threat of coerced deportation was properly regarded as a break in the continuum of the alien's physical presence for purposes of cancellation of removal); *see also Palomino v. Ashcroft*, 354 F.3d 942 (8th Cir. 2004); *Mireles-Valdez v. Ashcroft*, 349 F.3d 213 (5th Cir. 2003).  *But see Ortiz-Cornejo v. Gonzales*, 400 F.3d 610 (8th Cir. 2005) (holding that the record was insufficient to conclude that departures were under the threat of deportation where the alien was stopped and returned to Mexico two times by immigration officials); *Reyes-Vasquez v. Ashcroft*, 395 F.3d 903, 908 (8th Cir. 2005) (finding that the alien's apprehension and return by the Border Patrol was not a "presence-breaking voluntary departure" where there was no evidence that the alien was informed of and accepted the terms); *Morales-Morales v. Ashcroft*, 384 F.3d 418 (7th Cir. 2004) (finding that *Matter of Romalez* is not applicable in the absence of

---

[2]  For purposes of suspension of deportation under former section 244(b)(2) of the Act, 8 U.S.C. § 1254(b)(2) (1994), an absence from the United States that was brief, casual, and innocent and did not meaningfully interrupt an alien's continuous presence would not preclude the alien from establishing eligibility for relief. *See also Rosenberg v. Fleuti*, 374 U.S. 449, 461 (1963) (enunciating the *Fleuti* doctrine relating to the admission of a lawful permanent resident whose departure was "innocent, casual, and brief").  Section 244 was stricken from the Act by section 308(b)(7) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-615 (effective Apr. 1, 1997) ("IIRIRA"), along with the exception for departures that were brief, casual, innocent and not meaningfully interruptive of continuous presence.  In regard to cancellation of removal, the Act now provides that an alien "shall be considered to have failed to maintain continuous physical presence in the United States . . . if the alien has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days."  Section 240A(d)(2) of the Act.  We have held that the *Fleuti* doctrine relating to brief, casual, and innocent departures did not survive the enactment of the IIRIRA as a judicial doctrine. *Matter of Collado*, 21 I&N Dec. 1061, 1065 (BIA 1998).

evidence that the respondent knew she departed in lieu of being placed in proceedings).

Under current law, therefore, the accrual of continuous physical presence terminates or breaks upon the occurrence of one of the following events: the service of a charging document; the commission of one of the enumerated criminal offenses; absences of a specified duration; or, as we held in *Matter of Romalez*, *supra*, voluntary departure under the threat of the commencement of removal or deportation proceedings. However, neither the Act nor our precedent decisions directly address the circumstances of an alien, such as the respondent, who has returned from a brief absence and is refused admission following an encounter with immigration officials at a land border port of entry.

The law currently provides that an applicant for admission who is coming or attempting to come into the United States at a port of entry is considered an arriving alien subject to inspection by immigration officers. Section 235(a)(3) of the Act, 8 U.S.C. § 1225(a)(3) (2000); 8 C.F.R. § 1001.1(q) (2005). The inspecting officers may, in their discretion, allow withdrawal of the application for admission. Section 235(a)(4) of the Act; 8 C.F.R. § 235.4 (2005). An arriving alien without documents to enter who is not allowed to withdraw his or her application for admission is ordered removed without further hearing or review.[3] *See* section 235(b)(1)(A)(i) of the Act.

Under the law in effect at the time the respondent applied for admission in 1993, which was prior to enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546 (effective Apr. 1, 1997) ("IIRIRA"), and the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (effective Apr. 24, 1996) ("AEDPA"), the respondent could have requested exclusion proceedings and have been either taken into custody, paroled into the United States, or returned to Mexico to await her hearing before an Immigration Judge. Section 236 of the Act, 8 U.S.C. § 1226 (1988 & Supp. V 1993). She might also have been permitted to withdraw her application for admission in exclusion proceedings before an Immigration Judge. *See Matter of Gutierrez*, 19 I&N Dec. 562, 564-65 (BIA 1988).[4] However, it appears that none of these events occurred, and the respondent simply departed from the port of entry.

---

[3] Although the respondent has not indicated an intent to apply for asylum or claimed a fear of persecution, we recognize that relief is available to applicants for admission who fear persecution. *See* sections 208, 241(b)(3) of the Act, 8 U.S.C. §§ 1158, 1231(b)(3) (2000); 8 C.F.R. § 1208.16(c) (2005).

[4] At the time of the attempted entry, neither statute nor regulation directly provided for the withdrawal of an application for admission. However, an Immigration Judge was permitted to allow the withdrawal in exclusion proceedings if the alien could show that the withdrawal would be "in the interest of justice," and that the alien possessed both the intent and means to depart the United States immediately. *Matter of Gutierrez, supra*. Such withdrawal would ordinarily only be granted with the concurrence of the former Immigration and Naturalization Service. *Id.* at 465.

## IV. ANALYSIS

The question before us is whether there is a break in continuous physical presence for purposes of section 240A(b)(1)(A) of the Act when an alien is turned away at a land border port of entry in the manner that occurred in this case. We find that the situation in *Matter of Romalez, supra*, is distinguishable from the respondent's circumstances and that her continuous physical presence was not broken.

Central to our holding in *Matter of Romalez* was the fact that execution of an order of removal would result in the termination of continuous physical presence. *Matter of Romalez, supra*, at 426-27. We concluded that the same should hold true for an action, taken in lieu of a formal removal, that also resulted in an enforced departure. *Id.*

Furthermore, we observed that the regulations governing special rule cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act, Pub. L. No. 105-100, tit. II, § 203(b), 111 Stat. 2193, 2198 (1997), *amended by* Pub. L. No. 105-139, 111 Stat. 2644 (1997) ("NACARA"), provide that a period of continuous physical presence is terminated when an alien has been removed under an order pursuant to any provision of the Act, has voluntarily departed under the threat of deportation, or has departed for purposes of committing an unlawful act. 8 C.F.R. § 240.64(b)(3) (2001) ("NACARA regulations"). We determined that a holding that physical presence continues to accrue for purposes of cancellation of removal under section 240A of the Act following an enforced voluntary return would be directly at odds with the Attorney General's NACARA regulations. *Matter of Romalez, supra*, at 427-28.[5] Analogizing the situation of an alien accepting an enforced voluntary return to that of an alien subject to an order of removal, we concluded that "it would be contrary to the very reason for deportation and removal orders, as well as enforced voluntary departures," to permit an alien to continue to accrue uninterrupted continuous physical presence after such a departure. *Id.* at 427.

In distinguishing this case from *Matter of Romalez,* we are guided in part by the recent decisions of the Seventh and Eighth Circuits, which hold that there was no break in continuous presence where an alien who encountered the Border Patrol after crossing into the United States at a place other than a port of entry was simply "turned back" and returned to Mexico. *Reyes-Vasquez v. Ashcroft*,

---

[5]  In *Vasquez-Lopez v. Ashcroft, supra*, at 973, the Ninth Circuit specifically noted with approval our reliance on the provision of the NACARA regulations regarding voluntary departure under the threat of deportation in the context of cancellation of removal under section 240A of the Act. The court also endorsed the other rationales supporting our conclusion that a voluntary departure under the threat of deportation constitutes a break in physical presence. *Matter of Romalez, supra*, at 428-29. However, our decision in *Romalez* is not dispositive in this case because the respondent's return to Mexico was not a voluntary departure from the United States to which she agreed in order to avoid the commencement of removal proceedings.

*supra*; *Morales-Morales v. Ashcroft*, *supra*; *see also Ortiz-Cornejo v. Gonzales*, *supra*.

In *Reyes-Vasquez*, the respondent returned illegally to the United States after a 2-week absence in 1990, was arrested by the Border Patrol, locked in a cell for several hours, fingerprinted, and then taken back to the border on a bus, without being told that he would otherwise have to go before an Immigration Judge. The Eighth Circuit explained that "voluntary departure under threat of deportation is the form of departure that breaks continual presence." *Reyes-Vasquez v. Ashcroft*, *supra*, at 907. The court held, however, that "before it may be found that a presence-breaking voluntary departure occurred, the record must contain some evidence that the alien was informed of and accepted its terms." *Id.* at 908.

Similarly, in *Morales-Morales*, after the respondent spent about 2 weeks in Mexico, she reentered the United States without inspection three or more times over a 6-day period, and each time she was apprehended and detained by the Border Patrol and voluntarily returned to Mexico. *Morales-Morales v. Ashcroft*, *supra*, at 420. The respondent testified that when she was detained by the Border Patrol prior to her voluntary departures, she never appeared before an Immigration Judge and was never placed in proceedings. The Seventh Circuit concluded that although it had no quarrel with the rule in *Romalez*, it could not equate being turned back at the border with a formal voluntary departure or a departure under an order of removal or deportation. Therefore, because there was no evidence in the record that Morales voluntarily departed for Mexico under the threat of removal or deportation proceedings, the court found no break in his continuous physical presence. *Id.* at 427-28.

We find that the circumstances of the aliens in these cases are sufficiently analogous to those of the respondent to make the circuit court decisions applicable here. In this case, the respondent was not made aware of the opportunity for exclusion proceedings. The evidence indicates that she genuinely had no idea how she would get back into the United States, and when taken aside by an official who told her she could not enter because she had no legal authorization to do so, she simply complied with his direction and returned to Mexico. There is no evidence that she left the port of entry under a threat of exclusion, that she withdrew an application for admission, or that she was fingerprinted, photographed, or otherwise detained. As the courts have held that apprehension and return to the border shortly after an illegal entry without formal acceptance of the terms of "voluntary return" or "voluntary departure" does not break an alien's continuous physical presence, it is clear that merely being turned back at a port of entry also does not end an alien's presence.

Consequently, we hold that an immigration official's refusal to admit an alien at a land border port of entry will not constitute a break in the alien's continuous physical presence, unless there is evidence that the alien was formally excluded or made subject to an order of expedited removal, was offered and accepted the opportunity to withdraw his or her application for admission, or was subjected to any other formal, documented process pursuant to which the alien was

determined to be inadmissible to the United States.[6] This evidence may include testimony or documentary evidence of a legally enforced refusal of admission and return such as a Record of Deportable/Inadmissible Alien (Form I-213), a Notice of Action–Voluntary Departure (Form I-210), an IDENT printout, affidavits or statements of the alien or immigration officials, photographs, fingerprints, or other appropriate forms and official records of the DHS. However, if, as here, the evidence indicates that the alien's encounter with immigration authorities involves nothing more than being returned to the border following refusal of admission for failure to have proper documents, the encounter does not break continuous physical presence.

We note in this respect that a formal order of exclusion or expedited removal of an arriving alien is functionally equivalent to an order of deportation or removal, and it would be inconsistent with the purpose of such an order for it not to break an alien's presence. Moreover, an alien's acceptance of withdrawal of an application for admission, while not identical, is comparable to a voluntary return under the threat of removal, which was the specific subject of *Matter of Romalez*.[7]

We are mindful that procedures at the border are much changed following the enactment of the IIRIRA, resulting in a greater likelihood that refusals of admission will be better documented than in the past. Nevertheless, we believe these standards should apply, as well, to encounters at the land ports of entry that occurred prior to the IIRIRA. To hold otherwise would potentially bar otherwise eligible respondents from cancellation of removal on the basis of uncertain evidence and speculation as to what occurred during a particular encounter at a port of entry.

---

[6] We note that expedited removal has recently been expanded to apply to aliens present without admission or parole who are apprehended in the United States, with certain limitations. 8 C.F.R. § 235.3(b)(i); *see also* Notice Designating Aliens for Expedited Removal, 69 Fed. Reg. 48,877 (Aug. 11, 2004) (authorizing expedited removal for aliens encountered within 100 miles of the border who have not been admitted or paroled and established 14 days' continuous physical presence immediately preceding the encounter); Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of the Immigration and Nationality Act, 67 Fed. Reg. 68,924 (Nov. 13, 2002) (authorizing expedited removal for certain aliens who arrived by sea, are not admitted or paroled, and do not have 2 years of continuous physical presence).

[7] The concurring opinion would adopt the "meaningfully interruptive" standard of prior law. The reasons for applying this test in the NACARA context, however, do not warrant its extension to cancellation of removal under section 240A of the Act. Moreover, we do not now confront a factual scenario that requires us to incorporate this aspect of former law in order to avoid a construction of the statute that is *directly* at odds with the position adopted by the Attorney General. *Cf. Matter of Romalez*, *supra*, at 427-28.

## V.  CONCLUSION

The evidence does not establish that at the time of her encounter at the San Ysidro port of entry in 1993, the respondent was formally excluded, was offered and accepted the opportunity to withdraw an application for admission, or was otherwise subjected to a formal, documented process pursuant to which she was determined to be inadmissible.  We therefore hold that her departure and subsequent application for admission did not break her physical presence in this country, and that she has met the 10-year continuous physical presence requirement for cancellation of removal.  This decision is consistent with the literal language of the statute and the purpose behind its enforcement provisions. It is also consistent with the principles that were enunciated in our decision in *Matter of Romalez, supra*, and endorsed by several circuit courts of appeals. Consequently, the respondent's appeal will be sustained, and the record will be remanded for consideration of her eligibility for cancellation of removal.

**ORDER:** The appeal is sustained.

**FURTHER ORDER:**  The record is remanded to the Immigration Court for further proceedings consistent with the foregoing opinion, and for the entry of a new decision.

*CONCURRING OPINION:* Roger A. Pauley, Board Member

Because the respondent's attempted entry occurred prior to the effective date of enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546 (effective Apr. 1, 1997) ("IIRIRA"), this case is a strange and unfortunate choice as a precedential vehicle. However, because the majority has plainly signaled an intent that their decision (albeit dicta in this respect) apply to post-IIRIRA attempts to enter at a point of entry, the case is at the same time of unusual importance, with adverse consequences for the nation's efforts at effective border control.[1]

Inasmuch as Immigration Judges have generally been applying our decision in *Matter of Romalez*, 23 I&N Dec. 423 (BIA 2002), expansively to find a break in continuous presence virtually whenever an alien is compelled to leave the

---

[1]  At the least, the ruling will require Immigration Judges, already burdened with swollen dockets, to revisit a very large number of cases in which cancellation of removal hearings were pretermitted based on a finding of a failure to establish the requisite continuous physical presence.  Even more disturbingly, this decision means that the vast majority of aliens who have sought or are seeking cancellation relief will pay no price for their unsuccessful attempts to enter this country illegally at a port of entry, as resource limitations dictate that the Department of Homeland Security ("DHS") often not go through the relatively tedious process required by regulation of entering expedited removal orders, *see* 8 C.F.R. § 235.3 (2005), but instead follow the informal practice, exemplified by the instant case, of simply directing the alien to return to the country from whence he or she came. *See infra* note 13.

country after encountering immigration authorities, and some courts have begun to resist this trend,[2] the Board has rightly determined to once again deal with the difficult issues surrounding the interpretation of section 240A(d)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(d)(2) (2000), specifically under what circumstances, beyond the 90- and 180-day periods of absence there set forth, will an alien's departure from the United States break continuous physical presence for purposes of eligibility for cancellation of removal. Although due to the ephemeral nature of the respondent's encounter with immigration enforcement officers at the port of entry I understand—and solely because of the pre-IIRIRA setting in which that critical event took place I reluctantly concur in—the result reached by the majority in this case, I disagree fundamentally with its rationale. The crabbed standard it announces does not take sufficient account of the differences between the situation in *Matter of Romalez, supra*, and the present post-IIRIRA circumstances surrounding the enforcement of immigration laws at a port of entry. Had this case involved a post-IIRIRA attempted entry I would have dissented.

In *Matter of Romalez, supra*, the Board held that when an alien is compelled to depart the United States under the threat of the institution of removal proceedings, such departure breaks the continuous physical presence required for cancellation of removal. In so holding, the Board found, inter alia, that the "Special Rules Relating to Continuous Residence or Physical Presence" set forth in section 240A(d)(2), which provide that certain periods of departure shall break physical presence, do not constitute the exclusive circumstances in which physical presence can be interrupted. The United States Court of Appeals for the Ninth Circuit, in which this case arises, concluded that our reading of the cancellation statute was reasonable. *See Vasquez-Lopez v. Ashcroft*, 343 F.3d 961 (9th Cir. 2003), *amending* 315 F.3d 1201 (9th Cir. 2003) (per curiam)

---

[2]  *See, e.g.*, *Ortiz-Cornejo v. Gonzalez*, 400 F.3d 610 (8th Cir. 2005) (finding, in a pre-IIRIRA port of entry context, that a break in presence occurs only where the record shows an alien accepted voluntary departure after being informed of its terms); *Reyes-Vasquez v. Ashcroft*, 395 F.3d 903 (8th Cir. 2005) (same); *Morales-Morales v. Ashcroft*, 384 F.3d 418, 428 (7th Cir. 2004) (finding a scenario in which an alien, post-IIRIRA, is merely turned away at a port of entry not covered by our *Matter of Romalez* decision, and declining to find that it constitutes a break in physical presence absent a "fully developed position by the BIA on this point."). Thus, only the United States Court of Appeals for the Seventh Circuit has addressed the instant issue where the alien's attempted entry occurred *after* the coming into effect of the IIRIRA, and it carefully qualified its holding by noting the absence of a "fully developed" Board position. Therefore, the viewpoint expressed herein is not in direct conflict with any as yet decided court of appeals decision, though admittedly the Eighth Circuit (whose decisions do not govern this appeal) appears not to have recognized the significance of the IIRIRA to the break-in-presence question.

(upholding the Board's conclusion that administrative voluntary departure, effectuated in lieu of removal proceedings, continues after the 1996 IIRIRA amendments to the Act to constitute a break in continuous physical presence).[3]

The majority here have decided that "an immigration official's refusal to admit an alien at a land border port of entry will not constitute a break in the alien's continuous physical presence, unless there is evidence that the alien was formally excluded or made subject to an order of expedited removal, was offered and accepted the opportunity to withdraw his or her application for admission, or was subjected to any other formal, documented process pursuant to which the alien was determined to be inadmissible to the United States." *Matter of Avilez*, 23 I&N Dec. 799, 805-06 (BIA 2005). This standard, which no Federal court has adopted, cannot be found in the Act or the regulations and appears, notwithstanding its claimed roots in *Matter of Romalez*, to have simply been invented. To the contrary, I believe the proper standard is to be found in the regulations.

*Matter of Romalez* relied in significant part on the regulation at 8 C.F.R. § 240.64(b)(3) (2001) implementing the Nicaraguan Adjustment and Central American Relief Act, Pub. L. No. 105-100, tit. II, 111 Stat. 2193 (enacted Nov. 19, 1997), *amended by* Pub. L. No. 105-139, 111 Stat. 2644 (1997) ("NACARA"). The Ninth Circuit endorsed in *Vasquez-Lopez v. Ashcroft*, *supra*, our having done so.[4] Logic therefore dictates that the Board likewise apply the immediately preceding regulation to that one, also applicable to applicants for NACARA special rule cancellation of removal, which states: "The applicant must establish that any period of absence less than 90 days was casual and innocent *and did not meaningfully interrupt the period of continuous physical presence in the United States*." 8 C.F.R. § 1240.64(b)(2) (2005) (emphasis added); *see also Matter of Romalez*, *supra*, at 434 n.7 (Pauley, concurring) (finding the regulatory provisions at 8 C.F.R. §§ 240.64(b)(2) and (3) "inextricably intertwined").[5]

---

[3] Other courts of appeals have likewise upheld our *Matter of Romalez* decision. *Palomino v. Ashcroft*, 354 F.3d 942 (8th Cir. 2004); *Mireles-Valdez v. Ashcroft*, 349 F.3d 213 (5th Cir. 2003).

[4] The Ninth Circuit in *Vasquez-Lopez v. Ashcroft*, *supra*, specifically noted that our reliance on the NACARA regulations applicable to breaks in presence was appropriate in the context of cancellation of removal under section 240A, agreeing with the Board that, as NACARA was intended to afford greater benefits to the particular classes of aliens within its scope as compared to ordinary applicants (as is this respondent) for cancellation of removal under section 240A, it was "'not apparent how [the Board] could find the respondent eligible for cancellation of removal without adopting a construction of the statute that is directly at odds with the position adopted by the Attorney General.'" *Vasquez-Lopez v. Ashcroft*, *supra*, at 973 (quoting *Matter of Romalez*, *supra*, at 428).

[5] To be sure, application of this regulation would essentially resurrect two prongs of the "brief, casual, and innocent" standard formerly found in section 244(b)(2) of the Act,

(continued...)

Thus the applicable standard in this case, I submit, is that in 8 C.F.R. § 1240.64(b)(2), namely whether the respondent's absence of less than 90 days "meaningfully interrupt[ed]" the period of continuous physical presence.[6] As the majority fails to apply this test, I am unable to subscribe to its opinion. Moreover, the new standard it develops out of whole cloth is overly restrictive and fails to take sufficient account of the considerations applicable at a land port of entry where aliens seeking to enter this country who are not entitled to do so are currently subject (as they were not at the time of the respondent's attempted entry) to a different regime established by Congress whereby they may be summarily removed. *See* section 235 of the Act, 8 U.S.C. § 1225 (2000).

Applying the correct standard, I would, if the events occurred today, find that the alien here did indeed experience a "meaningful interruption" of her continuous physical presence and that her directed "return" to Mexico thus was not "lacking in significance" as regards any break in her physical presence. *Vasquez-Lopez v. Ashcroft*, *supra*, at 974; *see also Morales-Morales v. Ashcroft*, *supra*. I cannot agree that a break in presence, post-IIRIRA, only takes place in the narrow circumstances adumbrated by the majority or described by the Eighth Circuit in *Reyes-Vasquez v. Ashcroft*, *supra*. Nothing in *Matter of Romalez*, *supra*, suggested that the kind of administrative voluntary departure in that case represented the *only* circumstances in which Congress contemplated a break in presence apart from the periods of absence set forth in the Act itself. Nor is a "meaningful interruption" standard consistent with such an interpretation. Yet that is essentially what the Eighth Circuit (and the majority here, with the exception of an alien who formally withdraws an application for admission) would prescribe. The Eighth Circuit asserts that *Matter of Romalez*, *supra*, is limited to situations in which a *threat* of the institution of removal proceedings *is communicated* to the alien prior to the alien's acceptance, rather than being placed in such proceedings, of the offered alternative of voluntary departure. But *Romalez,* although involving such facts*,* cannot be confined to this scenario. If it were, then even a departure pursuant to an *order* of removal would not break presence, a result gainsaid by the very regulation we applied in

---

[5] (...continued)
8 U.S.C. § 1254(b)(2) (1994), which we have observed was "not carried forward by Congress in the IIRIRA's new cancellation of removal provisions." *Matter of Collado*, 21 I&N Dec. 1061, 1064 n.4 (BIA 1998). Two prongs, however, do not equate to resurrection of the entire prior statute. Moreover, *Matter of Romalez* is a binding precedent from which the majority shows no sign of retreating, and the court of appeals whose decisions are likewise binding in this case has expressly approved not only our holding in *Romalez* but our use of the NACARA regulation that serves to support it. *Vasquez-Lopez v. Ashcroft*, *supra*.

[6] This standard is effectively and functionally identical to the standard employed by the Ninth Circuit in *Vasquez-Lopez v. Ashcroft*, *supra*, at 974, where the court noted that the alien's "absence [pursuant to administrative voluntary departure] was not inadvertent, casual, or otherwise lacking in significance."

*Matter of Romalez.*[7] Hence it is clear that a break in presence may occur, notwithstanding that no threat is conveyed to the alien or the option of voluntary departure presented.

With the preceding as backdrop, it becomes evident that the most important factors underlying *Matter of Romalez*—as applied to the different circumstances of aliens seeking to enter this country at a land port of entry—are not those involving the quid pro quo aspect of that decision wherein an alien is presented with a choice to depart "voluntarily" or undergo removal proceedings, but instead require an assessment of the extent to which an encounter with immigration enforcement authorities, while an alien is seeking to enter unlawfully, supports a conclusion that the alien's earlier departure and attempted reentry have broken the continuity of the alien's physical presence.[8] Applying a "meaningful interruption" test, I would agree, as the majority here conclude, that an alien's withdrawal of an application for admission would break presence despite the fact that such a withdrawal need not, under the regulations, be accompanied by a threat of the institution of removal proceedings.[9] Similarly, I would find that where an alien's post-IIRIRA encounter with immigration authorities at a port of entry was significant as evidenced by the alien's being interrogated, detained, fingerprinted, and photographed prefatory to being allowed to "return"[10] rather than being placed in expedited removal proceedings, such an event would break presence.[11] It is admittedly a much closer question whether a "meaningful interruption" of continuous physical presence is properly

---

[7] "For all applications made under this subpart, a period of continuous physical presence is terminated whenever an alien is removed from the United States *under an order* issued pursuant to any provision of the Act or the alien has voluntarily departed under the threat of deportation or when the departure is made for purposes of committing an unlawful act." 8 C.F.R. § 1240.64(b)(3) (emphasis added).

[8] At first blush, it may appear anomalous that an unsuccessful illegal attempt to enter the United States where the alien is compelled to return by immigration authorities may interrupt the continuity of the alien's physical presence, whereas a successful unlawful reentry without inspection would not do so. But the test is whether the alien's less than 90-day departure, including the events comprising the alien's attempt to reenter, represents a meaningful break in presence. An alien who does not encounter immigration enforcement authorities and illegally reenters the United States has not undergone an experience that meaningfully affects the continuity of the alien's presence here.

[9] Under 8 C.F.R. § 235.4 (2005) an "alien's decision to withdraw his or her application for admission must be made voluntarily." But while this implies that the alien must know that he or she has made such an application and what it, and a withdrawal thereof, generally entails, the regulation does not require that a threat to institute removal proceedings must be communicated in order for a valid withdrawal decision to occur.

[10] Quotation marks are appropriate, as an alien who has not been admitted at a port of entry has not, in contemplation of immigration law, entered the United States. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953).

[11] This factual scenario is present in many other cases past or pending before the Board.

found post-IIRIRA on the instant facts where an alien, after being briefly detained by immigration authorities at a port of entry, is simply directed to leave. However, I agree with the collective wisdom of Immigration Judges who in such a post-IIRIRA setting have almost uniformly (in my experience) interpreted *Matter of Romalez* to find a break in presence in even this relatively attenuated situation. This practice is justified by the substantial difference between the context in which *Matter of Romalez, supra*, was decided[12] and the instant situation where the alien, post-IIRIRA, was encountered seeking to enter through a port of entry. What is a "meaningful interruption" of continuous physical presence—a flexible standard—must vary and adapt in application depending on this crucial difference.

Congress in the IIRIRA has distinguished between enforcement of our immigration laws at the time aliens seek to enter the United States at a port of entry and enforcement of those laws once entry has been made (lawfully or otherwise). It has done so by enacting a regime that allows for an expedited order of removal when authorities at a point of entry determine that an alien (other than one expressing a fear of persecution) has no right to be admitted to this country. *See* section 235(b) of the Act; 8 C.F.R. § 235.3 (2005). Moreover, such an expedited order of removal permits reinstatement of the removal order, after a subsequent illegal entry by the alien (as occurred here), *willy-nilly and without recourse to an Immigration Judge or this Board,* with the consequence of barring the alien from eligibility for *any* further relief. Section 241(a)(5) of the Act, 8 U.S.C. § 1231(a)(5) (2000); *Morales-Izquierdo v. Ashcroft*, 388 F.3d 1299 (9th Cir. 2004).

In this context, it is unrealistic to conclude that Congress would not and did not view as a "significant" or "meaningful" interruption of an alien's continuous presence the fact that, upon an attempted unlawful entry at a land port of entry an alien has been subjected to actions by immigration officials, such as interrogation, detention, fingerprinting, and/or photographing, that could have led to the institution of expedited removal. An alien should not derive an advantage in terms of meeting the continuous physical presence requirement, in all circumstances short of a withdrawal of admission or an actual threat of removal being conveyed, because immigration authorities permitted the alien to leave the port of entry rather than using the harsher alternative of expedited removal proceedings.[13]

---

[12] It is not clear from the majority opinion in *Matter of Romalez* whether the alien would have been subject to exclusion or deportation proceedings, nor would this distinction appear to be relevant to the break-in-presence issue. The possibility of expedited removal, however, significantly alters the equation in my view.

[13] It may be contended that such harsher results were what Congress intended, and that, to the extent the majority decision may impel the DHS towards the imposition of more expedited removals, its relative leniency in terms of the break-in-presence issue is more in keeping with congressional design. But there is no evidence that the DHS is able with

(continued...)

The majority have chosen this case as a vehicle to publish its problematic new standard notwithstanding that it arises in a setting where an order of expedited removal was never a possibility. While it is clear that the majority intend the standard to apply to post-IIRIRA attempted entries, the entire opinion in this respect is dicta that Immigration Judges could ignore. Even if most do not, needless confusion may result from this and other aspects of the majority opinion.[14] Given the pre-IIRIRA context of this case, where the alien, if not informally refused admission, would have likely been placed in exclusion proceedings, and was not subject to expedited removal, I am constrained to concur in the result (finding that, in this situation, the alien did not experience a "meaningful interruption" of presence) although, for the reasons set forth and considering the consequences of the opinion if applied as intended to the post-IIRIRA regime, I would much prefer to dissent.

I therefore respectfully concur.

---

[13] (...continued)

existing resources to move toward greater use of expedited removal orders or that Congress in 1996 contemplated that expedited removal orders and withdrawals of applications for admission, each of which either implicitly or explicitly requires significant paperwork and other one-on-one processing, *see* 8 C.F.R. §§ 235.3, 235.4 (2005), would be the only, or even the main, tool used by the then Immigration and Naturalization Service to control the huge numbers of aliens unlawfully seeking admission at our ports of entry. Rather, it appears from the large number of cases I have seen (I am unaware of any statistics) where the DHS has employed the informal method used here, of allowing aliens not entitled to enter to "return" without undergoing formal withdrawal of application or expedited removal procedures, that such informal processing is and was vital to the practical and efficient administration of our laws. And by not visiting any adverse consequence on aliens who are so returned, short of the formal alternative of expedited removal, the majority's decision fails to discourage aliens from continuing to seek through fraud or other means unlawfully to enter at ports of entry. As such, the majority decision exposes (to the extent it is deemed correct; *or itself creates*, to the extent its standard is thought unduly restrictive) a flaw in the statutory or regulatory system, whereby there is an insufficient disincentive for aliens to seek by fraud or with inadequate documents to enter the United States at our border ports of entry. It may be that only Congress can fully and effectively address this matter, although regulatory changes making it less resource-intensive to enter expedited removal orders might also help alleviate the problem.

[14] For example, the majority's observation that there is no evidence in this case of the respondent's having been "fingerprinted, photographed, or otherwise detained" will surely lead to confusion, in light of its standard for adjudicating break-in-presence claims that seemingly renders such facts irrelevant. *Matter of Avilez*, *supra*, at 805.