**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1230
_____

GAD DEMANDSTEIN,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(A071-875-923)
Immigration Judge:  Honorable Annie S. Garcy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 23, 2011

Before:  FUENTES, VANASKIE and NYGAARD, <u>Circuit
Judges</u>

(Opinion filed: February 24, 2011)

Lauren A. Anselowitz
Harlan York & Associates
60 Park Place
Suite 1010
Newark, NJ 07102

Robert A. Frank
Frank & Pollack

1

972 Broad Street
Suite 602
Newark, NJ 017102

Counsel for Petitioner

Eric H. Holder, Jr.
Tony West
John C. Cunningham, I
Regina A. Byrd
Thomas W. Hussey
Don G. Scroggin
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044-0878

Counsel for Respondents

_____

OPINION OF THE COURT
_____

FUENTES, Circuit Judge.

Gad Demandstein, a native and citizen of Israel, petitions for review of a final order of removal. For the reasons that follow, we hold that the record supports the Board of Immigration Appeals's ("BIA") determination that Demandstein is ineligible for cancellation of removal under INA § 240A(b)(1), and will deny the petition for review.

I.

Demandstein, formerly "Gad Yahalomi," first entered the United States in 1987 on a visitor visa and overstayed. In 1990 and 1991, he again entered as a visitor and overstayed each time. In 2004, Demandstein applied for an adjustment of status based on an employer's approved immigrant petition

2

for an alien worker. The Department of Homeland Security ("DHS") denied the request to adjust status because Demandstein failed to submit an affidavit detailing his past attempts to enter the United States, and because he was arrested in 1992 for attempting to smuggle another alien into this country.

In 2007, DHS served a Notice to Appear, charging Demandstein as inadmissible for being present without being admitted or paroled, 8 U.S.C. § 1182(a)(6)(A)(i), and as an alien who knowingly encouraged or assisted another alien in trying to enter the United States illegally, id. § 1182(a)(6)(E)(i). In proceedings before an Immigration Judge ("IJ"), Demandstein conceded both grounds and he was deemed inadmissible as charged.

Demandstein applied for cancellation of removal under INA § 240A(b)(1), 8 U.S.C. § 1229b(b)(1), which permits the Attorney General to cancel removal if an inadmissible alien meets certain requirements, including a showing that he "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application[.]" 8 U.S.C. § 1229b(b)(1)(A). DHS moved to disallow Demandstein's application on the ground that he cannot make this showing. It argued that, because Demandstein withdrew an application for admission to the United States in 1999 when he was refused entry at the Canadian border, the continuity of his period of physical presence terminated at that time. Consequently, DHS argued, Demandstein cannot show ten continuous years of presence prior to being served with the Notice to Appear in 2007.

The IJ granted DHS's motion, concluding from the evidence presented at an evidentiary hearing on the issue that Demandstein "knowingly withdrew his application for admission [in 1999] and terminated his period of continuous physical presence by doing so." A.R. at 49. The IJ ordered removal to Israel. The BIA dismissed Demandstein's appeal. It found that his "actions show that the withdrawal of [his] application for admission, in lieu of a formal determination of admissibility, was made with the understanding that [he] had no legitimate expectation that he could legally reenter the

3

United States and resume his continuous physical presence in this country." A.R. at 4. Consequently, the BIA held that Demandstein is ineligible for cancellation of removal. Demandstein timely filed a petition for review.

## II.

We have jurisdiction under 8 U.S.C. § 1252(a) to review the question of Demandstein's statutory eligibility for cancellation of removal. See Okeke v. Gonzales, 407 F.3d 585, 588 n.4 (3d Cir. 2005); Mendez-Reyes v. Att'y Gen., 428 F.3d 187, 189 (3d Cir. 2005). "Where, as here, the BIA issues a decision on the merits and not simply a summary affirmance, we review the BIA's, not the IJ's, decision." Li v. Att'y Gen., 400 F.3d 157, 162 (3d Cir. 2005). "We review the BIA's legal determinations *de novo*, subject to established principles of deference." Wang v. Ashcroft, 368 F.3d 347, 349 (3d Cir. 2004). "We apply substantial evidence review to agency findings of fact, departing from factual findings only where a reasonable adjudicator would be compelled to arrive at a contrary conclusion." Mendez-Reyes, 428 F.3d at 191.

Demandstein argues on appeal that he did not *knowingly* withdraw his application for admission to this country in 1999, and therefore did not end his period of continuous physical presence under § 1229b(b)(1)(A), because he retained a legitimate expectation that he could reenter the United States and resume his period of continuous presence. We discern no error in the BIA's rejection of this argument.

"[A]n alien applying for cancellation of removal must establish at least ten years of continuous physical presence in the United States under § 1229b(b)(1)(A)." Mendez-Reyes, 428 F.3d at 191. "Section 1229b(d) sets forth two situations in which continuous presence is deemed to have been broken." Id. First, physical presence ends when an alien is served a notice to appear or has committed an applicable criminal offense. 8 U.S.C. § 1229b(d)(1). Second, an alien fails to maintain continuous physical presence if he has departed from the United States "for any period in excess of 90 days or for any periods in the aggregate exceeding 180

4

days." Id. § 1229b(d)(2).

Continuous physical presence also can end for reasons other than those set forth in § 1229b(d). For example, the BIA has held that continuous presence is broken when an alien voluntarily departs under threat of removal proceedings. See Matter of Romalez-Alcaide, 23 I. & N. Dec. 423, 429 (B.I.A. 2002). When an "alien leaves with the knowledge that he does so in lieu of being placed in proceedings[,] … [t]here is no legitimate expectation by either of the parties that an alien could illegally reenter and resume a period of continuous physical presence." Id. This Court has approved of the reasoning in Romalez-Alcaide as a permissible construction of § 1229b. Mendez-Reyes, 428 F.3d at 192. Further, we held in Mendez-Reyes that an alien's withdrawal of an application for admission to the United States, inasmuch as it is identical in effect to an acceptance of voluntary departure in lieu of removal proceedings, terminates an alien's continuous physical presence for purposes of § 1229b(b)(1)(A). Id. at 193.

As the BIA observed, the issue here "is whether [Demandstein], upon returning from a [brief] trip to Canada [in 1999], knowingly withdrew his application for admission to the United States in lieu of a formal determination of inadmissibility, so that [his] continuous physical presence in this country was terminated and he was rendered statutorily ineligible for cancellation[.]" A.R. at 3. The IJ held an evidentiary hearing on the issue, and Demandstein testified at the hearing. The BIA summarized the pertinent facts established before the IJ as follows:

> It is undisputed that [Demandstein] was refused permission to enter the United States at the Canadian border [in 1999] and told that his [non-immigrant] visa had been cancelled. [Demandstein] was advised by an immigration attorney to return to Israel and apply for a new visa to enter the United States. [Demandstein] signed a formal withdrawal of his application for admission which explained that he was

5

doing so in lieu of a formal determination of admissibility, although [Demandstein] now claims that he did not understand what he was signing. [Demandstein] returned to Israel [for approximately two months] and obtained a new passport under a different name. [Demandstein] testified that he applied for a new visa but apparently abandoned the application after he was told the process would take several months. [Demandstein] returned to the United States without a valid entry visa after bypassing the [Canadian] border checkpoint by walking into this country through the woods, without inspection.

A.R. at 3-4 (citation to the record and footnote omitted).

At the time he was refused entry at the border checkpoint, Demandstein signed a two-page form titled "Withdrawal of Application for Admission/Consular Notification" (Form I-275). Demandstein concedes that his signature appears on the Form I-275 that DHS submitted into evidence before the IJ. This document reflects that Demandstein's visa was cancelled, that he had chosen to withdraw his application for admission, and that his admissibility was in question because of "Alien smuggling 1992." A.R. at 161. Demandstein's signature on the Form appears directly under the following language:

I understand that my admissibility is questioned for the above reasons, which I have read or which have been read to me in the English language. I request that I be permitted to withdraw my application for admission and return abroad. I understand that my voluntary withdrawal of my application for admission is in lieu of a formal determination concerning my admissibility … by an immigration officer.

A.R. at 162. There is no dispute that Demandstein fully understands English.

6

The BIA rejected Demandstein's argument that he unknowingly withdrew the application for admission, explaining that the argument "was undermined by [Demandstein's] conduct in returning to Israel to obtain a new passport under a different name, his decision not to pursue a new visa, and his evasion of border authorities upon reentering the United States." A.R. at 4. The BIA found that Demandstein's withdrawal "was made with the understanding that [he] had no legitimate expectation that he could legally reenter the United States and resume his continuous physical presence in this country." Id.

The record supports the BIA's findings. In addition to the undisputed evidence that he signed Form I-275, Demandstein's actions provide ample support for the finding that he knowingly withdrew the application for admission in lieu of a proceeding on admissibility, with the consequence that he could not expect to resume his continuous physical presence after doing so. Demandstein devotes much of his argument on this appeal to highlighting portions of the administrative record -- mainly in the form of his own testimony before the IJ -- which he believes support a finding that he did not knowingly withdraw the application for admission. His argument fails, however, in light of the limited scope of this Court's review. In considering the BIA's determination, we must "uphold the findings of the BIA to the extent that they are supported by reasonable, substantial and probative evidence on the record considered as a whole, and will reverse those findings only if there is evidence so compelling that no reasonable factfinder could conclude as the BIA did." Kayembe v. Ashcroft, 334 F.3d 231, 234 (3d Cir. 2003). Consequently, even accepting that a factfinder could conclude that there is some evidence of record to support Demandstein's position, he has not shown that the record as a whole *compels* a finding that his withdrawal of the application for admission was unknowing.

Furthermore, our holding in Mendez-Reyes -- that withdrawal of an application for admission in lieu of a determination of admissibility ends continuous physical presence -- controls the legal effect of Demandstein's actions.

7

We observed in <u>Mendez-Reyes</u> that whether an alien is granted permission to withdraw an application for admission lies within the Attorney General's discretion and is not merely a unilateral decision on the alien's part. 428 F.3d at 193. Further, the alien in <u>Mendez-Reyes</u>, like Demandstein, signed a form acknowledging his voluntary withdrawal of the application for admission in lieu of a determination on admissibility. <u>Id.</u> An alien's "acquisition of permission to withdraw his application is identical to being granted voluntary departure insofar as [he] obtained that permission in order to avoid the perils of removal proceedings," and thus it terminates the period of continuous physical presence. <u>Id.</u>

Demandstein argues that his circumstances can be distinguished from <u>Mendez-Reyes</u>. He concedes that he signed Form I-275, but he claims that the circumstances surrounding the signing, including that he was refused admission at the border and told to reapply for a visa in Israel rather than being paroled into this country, show that he did not fully understand the import of withdrawing the application for admission, and therefore he retained an expectation that he could reenter and resume his continuous physical presence. Demandstein argues that his case should be viewed as similar to those in which an alien is turned away at the border and later reenters without inspection, a scenario that would not serve to break the period of continuous physical presence.

Demandstein's attempt to evade the precedential force of <u>Mendez-Reyes</u> is unpersuasive. Courts have recognized that "continuous physical presence is not interrupted if a person is merely stopped at the border and turned away without any more formality." <u>Valadez-Munoz v. Holder</u>, 623 F.3d 1304, 1311 (9th Cir. 2010); <u>see</u> <u>Ascencio-Rodriguez v. Holder</u>, 595 F.3d 105, 111 (2d Cir. 2010) ("Although no Court of Appeals has rejected the central holding of *In re Romalez-Alcaide*, several have held that it does not apply in cases where an alien is simply turned away at the border"). In <u>Matter of Avilez-Nava</u>, the BIA held, consistent with circuit court precedent, that being turned away at the border without formal acceptance of voluntary departure does not break

8

continuous physical presence. 23 I. & N. Dec. 799, 805 (B.I.A. 2005). The BIA made clear, however, that "an immigration official's refusal to admit an alien at a land border port of entry will not constitute a break in the alien's continuous physical presence, <u>unless</u> there is evidence that the alien … was offered and accepted the opportunity to withdraw his or her application for admission[.]" <u>Id.</u> (emphasis added).

Demandstein was not merely turned away at the border. Instead, border officials cancelled the visa that he presented, noted that his admissibility was in question due to a prior arrest, and presented Form I-275. There is no evidence that Demandstein could have failed to appreciate the language of Form I-275, which, given his signature on the document, is sufficient to establish that he voluntarily requested permission to withdraw his application and return abroad, and that he did so in lieu of a proceeding to determine his admissibility. Had Demandstein "allowed immigration proceedings to be initiated against him in 199[9], his continuous physical presence would have been automatically terminated under § 1229c(d)(1)," <u>Mendez-Reyes</u>, 428 F.3d at 193, and thus, rather than face certain interruption of the continuous-presence period, Demandstein elected to withdraw the application for admission and return to Israel to apply for a new visa. But "[j]ust as with a voluntary departure, neither the government nor [Demandstein] himself could have a 'legitimate expectation . . . that [he] could illegally reenter and resume a period of continuous physical presence.'" <u>Id.</u> (quoting <u>Romalez-Alcaide</u>, 23 I. & N. Dec. at 429). Demandstein, therefore, cannot "benefit from the fact that he managed to illegally reenter the United States before the 90-day time frame expired[.]" <u>Id.</u>

III.

In sum, we find no error in the BIA's determination that Demandstein is unable to satisfy the ten-year continuous physical presence requirement of § 1229b(b)(1)(A), and is therefore ineligible for the relief of cancellation of removal. Accordingly, we will deny the petition for review.