**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3953
_____

CHANG BING WANG,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A099-928-110)
Immigration Judge:  Susan G. Roy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 10, 2012
Before: SCIRICA, GREENAWAY, JR. and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: October 11, 2012)
_____

**OPINION**
_____

PER CURIAM

        Chang Bing Wang is a native and citizen of China who unlawfully entered the

United States.  An immigration judge ("IJ") found Wang removable, and the Board of

Immigration Appeals ("BIA") ordered that he be removed to China.  We will deny

Wang's petition for review of that order.

I.

In 2006, Wang filed an affirmative application for asylum, withholding of removal, and relief under the Convention Against Torture. He claimed to have suffered past persecution insofar as his spouse was subjected to forced IUD insertion and sterilization by Chinese family planning officials. An asylum officer declined to grant relief and referred Wang's application to an IJ in New York City. After a change of venue was granted, removal proceedings were conducted by an IJ in Newark, New Jersey. Wang conceded removability and submitted a supplemental declaration in which he contended for the first time that he should be granted asylum because he was assaulted and jailed on account of his opposition to China's coercive family planning policy.

The IJ made adverse credibility and corroboration determinations and denied all requested relief. Regarding the adverse credibility determination, the IJ reasoned that "the bulk of [Wang's] asylum claim was not raised in his original asylum application or before the asylum office when he was interviewed there." JA at 39. The IJ compared the original asylum application with the supplemental declaration, which added several significant details to Wang's story:

> The original basis of [Wang's] claim is that his wife was forced to have an IUD inserted and, furthermore, that she was forced to be sterilized after the birth of their second child . . . . However, [Wang] then filed a supplemental statement . . . which . . . says .

2

. . that individuals broke [into] the house and not only did they take the wife to have an IUD inserted, but [Wang] . . . tried to block her and ultimately had an altercation with the family planning officials, was arrested, detained, [and] held at a small, empty cement room . . . for a period of almost seven days . . . .

JA at 39-41.

When asked why the details in the supplemental declaration were not in the original asylum application, Wang vacillated: he "thought that [those details were] in his asylum application originally. Then he testified that he was not sure . . . . He then stated that he thought he told his attorney . . . [and] just kept trying to lay blame on his attorney." JA at 41-42. The IJ gave no evidentiary weight to a written statement by Wang's counsel, in which counsel attempted to "fall on his sword" by suggesting that he prevented Wang from giving a complete account of his alleged persecution in the original asylum application. The IJ also noted discrepancies between the supplemental declaration and a 2008 letter from Wang's spouse: "Nowhere in her letter does she mention that her husband was forced to sign a confession or that he was beaten or interrogated for seven days or deprived of food or was in a weak physical condition when he was released." JA at 48.

In support of the adverse corroboration determination, the IJ gave no evidentiary weight to either Wang's "sterilization certificate" or his "arrest document." The IJ referenced the 2007 State Department report, which "specifically discusses the relative

3

ease of being able to obtain fraudulent documents in China," especially from Wang's native Fujian Province. JA at 52. The IJ noted that "it is not necessarily believable objective proof that one has a sterilization certificate or even an arrest document." JA at 52. The IJ thus denied all relief and ordered Wang removed.

The BIA dismissed Wang's appeal. It agreed with the IJ's adverse credibility determination and noted some of the same discrepancies among the original asylum application, the wife's letter, Wang's testimony, and the supplemental declaration. The BIA expounded upon the IJ's finding that Wang's documentary evidence should be given little, if any, evidentiary weight. It stated that the arrest document "was acquired for the purpose of litigation and was not prepared contemporaneously with the incident described," and it was "not signed or authenticated pursuant to 8 C.F.R. § 1287.6(b) or by other means, and does not have a certificate of translation." JA at 3.

In addition, the BIA concurred in the IJ's observation that "documentation from China, particularly from Fujian Province, is subject to widespread fabrication and fraud." JA at 3. The BIA agreed with the IJ that Wang's explanation for the new details in the supplemental declaration—the change in the law regarding a spouse's eligibility for asylum based on China's coercive population control program—was "unpersuasive" because "at the time [Wang] applied for asylum in 2006, an individual who had offered other resistance to the coercive population control program could establish eligibility for

4

asylum in his own right." JA at 2. Wang filed this petition for review.

## II.

We have jurisdiction under 8 U.S.C. § 1252(a)(1). When the BIA issues its own decision, we limit our review to that decision against the backdrop of the administrative record. See Demandstein v. Att'y Gen., 639 F.3d 653, 655 (3d Cir. 2011) (per curiam). Under the substantial evidence standard, "[w]e . . . are bound by the administrative findings of fact unless a reasonable adjudicator would be compelled to arrive at a contrary conclusion." Camara v. Att'y Gen., 580 F.3d 196, 201 (3d Cir. 2009) (quotation marks omitted).

## III.

Wang raises two claims: (1) the adverse credibility determination is not supported by substantial evidence; and (2) the BIA erred when it refused to credit the documentary evidence of Wang's alleged arrest.

In support of his first claim, Wang contends that he "provided reasonable and adequate explanations for why he did not include [in his original asylum application] the arrest, detention and interrogation that he had suffered," chief among those reasons being that originally he was only seeking asylum vis-à-vis his wife's mistreatment and not on account of any direct harm. Pet'r's Br. at 4.

We find Wang's explanation unavailing. Like the BIA, we observe that IIRIRA—

5

enacted ten years before Wang applied for asylum—"broadened the definition of refugee to include a person who has been [persecuted for] resistance to a coercive population control program." Lin-Zheng v. Att'y Gen., 557 F.3d 147, 155 (3d Cir. 2009) (en banc) (quotation marks omitted). Thus, Wang's more detailed account of the events that transpired on May 24, 1992, if believed, provided fertile ground for a claim of past persecution at the time he originally applied for asylum. Wang chose instead to pursue a claim that would eventually be foreclosed by our decision in Lin-Zheng. See id. at 156 (holding that alien cannot rely on spouse's forced abortion to establish automatic asylum eligibility based on past persecution). In any event, the BIA deferred to the IJ's finding that the evolution of Wang's claim was indicative of incredibility, especially given the significant discrepancies between Wang's testimony and the letter from his wife. We are not compelled to conclude otherwise, and therefore deem the adverse credibility determination to be supported by substantial evidence for essentially the reasons given in the BIA's decision.

We also reject Wang's second claim regarding the BIA's treatment of certain documents Wang submitted to the IJ. Wang argues that the BIA relied on mere "conjecture" in upholding the IJ's finding that Wang's abortion certificate and arrest record were inauthentic and thus incapable of corroborating Wang's testimony. We disagree. The IJ relied on background materials in finding that asylum-seekers from

6

Fujian province attempt to game the immigration system with fabricated evidence of

forced abortions and other potentially persecutory acts.  Wang offers no persuasive reason

that would compel us to upend that finding, which was adopted by the BIA.[1]

Accordingly, for the reasons given in this opinion, we will deny the petition for

review.

---

[1] The BIA determined that the arrest document in particular was not authenticated
pursuant to 8 C.F.R. § 1287.6(b).  A failure to comply with that regulation will not by
itself bar evidence automatically; an asylum applicant should be given an opportunity to
authenticate documentary evidence through other means.  Leia v. Ashcroft, 393 F.3d 427,
434 (3d Cir. 2005).  Even assuming that the IJ erred in failing to provide such an
opportunity to Wang, we would deem that error harmless given that the adverse
credibility determination in this case is supported by substantial evidence.  See Li Hua
Yuan v. Att'y Gen., 642 F.3d 420, 427 (3d Cir. 2011).